Morgan *v.* Eads.

[Cite as *Morgan v. Eads,* 104 Ohio St.3d 142, 2004-Ohio-6110.]

(No. 2004–0141—Submitted September 28, 2004—Decided November 22, 2004.)

Alice Robie Resnick, J.

{¶ 1} This case is here on certified questions of state law from the United States District Court for the Northern District of Ohio. That court has asked us to answer two questions:

{¶ 2} "1. Is an application to reopen an appeal under Ohio Rule of Appellate Procedure 26(B) part of the direct appeal from a judgment of conviction?

{¶ 3} "2. If so, does the application become part of the direct appeal at the time of its filing or only upon the granting of the application?"

{¶ 4} We now answer no to the first question. In light of that answer, we consider the second question moot.

{¶ 5} Ohio's App.R. 26(B)(1) states: "A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel. An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time."

{¶ 6} We adopted App.R. 26(B), effective on July 1, 1993, in the wake of our decision the year before in *State v. Murnahan* (1992), 63 Ohio St.3d 60, 584 N.E.2d 1204. See 1993 Staff Notes to App.R. 26. In *Murnahan,* we held that "[c]laims of ineffective assistance of appellate counsel are not cognizable in post-

conviction proceedings pursuant to R.C. 2953.21." Id. at paragraph one of the syllabus. We based our decision in *Murnahan* on our view that claims of ineffective assistance of appellate counsel should be considered and disposed of in the appellate court where the alleged error occurred, and not in the state's trial courts, where postconviction claims are first raised by Ohio criminal defendants under R.C. 2953.21. In *Murnahan,* we explained that "appellate judges are in the best position to recognize" whether a criminal defendant has received and been prejudiced by the ineffective assistance of appellate counsel. Id. at 65, 584 N.E.2d 1204. Allowing ineffective-appellate-counsel claims to be raised in Ohio trial courts like other postconviction claims "could in effect permit trial courts to second-guess superior appellate courts." Id. Thus, our reasoning in *Murnahan* concerned the appropriate court in which to bring a collateral challenge to the effectiveness of appellate counsel. However, we never suggested that such a collateral challenge, when brought, was part of the initial appeal.

{¶ 7} Although our rationale underlying *Murnahan* was sound, we recognized when we issued that decision that Ohio "ha[d] no statutory authority or court rules dedicated to the procedure to be followed by defendants who allege ineffective assistance of appellate counsel." Id. at 66, 584 N.E.2d 1204, fn. 6. The next year, we adopted App.R. 26(B) to establish a collateral postconviction process by which criminal defendants could raise claims of ineffective assistance of appellate counsel.

{¶ 8} The provisions of App.R. 26(B) were specifically designed to provide for a specialized type of postconviction process. The rule was designed to offer defendants a separate collateral opportunity to raise ineffective-appellate-counsel claims beyond the opportunities that exist through traditional motions for reconsideration and discretionary appeals to our court or the Supreme Court of the United States.

{¶ 9} An application under App.R. 26(B), whether successful or not, was never intended to constitute part of the original appeal. Creating this remedy in the *Murnahan* decision, and then codifying the remedy in App.R. 26(B), does not affect its status as a postconviction remedy. Moreover, simply initiating the App.R. 26(B) remedy by an application in the court of appeals, instead of the trial court, does not alter its status as a collateral postconviction remedy. An application for postconviction relief under R.C. 2953.21 is not part of the original trial simply because it begins in the trial court, and an App.R. 26(B) application is not part of the original appeal simply because it is filed in the court of appeals.

{¶ 10} Several reasons support our conclusion that proceedings under App.R. 26(B) are collateral postconviction proceedings and not part of the original appeal process.

{¶ 11} First, the application process under App.R. 26(B) requires that an applicant submit additional matter not in the record of the trial to support claims that appellate counsel was ineffective. See App.R. 26(B)(2)(d) ("sworn statement of the basis for the claim"); 26(B)(2)(e) ("supplemental affidavits upon which the applicant relies"). See, also, App.R. 26(B)(8) (if necessary, an "evidentiary hearing may be conducted by the court or referred to a magistrate").

{¶ 12} This procedure under App.R. 26(B) bears a strong resemblance to the process that follows when a postconviction petition is filed in a trial court. See R.C. 2953.21(A)(1)(a) ("petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief"); 2953.21(C); 2953.21(E) (unless petition deemed without merit, "court shall proceed to a prompt hearing"); 2953.22 ("Testimony * * * may be offered by deposition"). Thus, in postconviction proceedings under R.C. 2953.21 et seq., trial courts consider additional material outside the record, and appellate courts do the same in App.R. 26(B) proceedings.

{¶ 13} In stark contrast to this practice of submitting additional material, a bedrock principle of appellate practice in Ohio is that an appeals court is limited to the record of the proceedings at trial. In *State v. Ishmail* (1978), 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500, we reversed the judgment of a court of appeals that had considered, in an appeal from a postconviction proceeding, a transcript that was not before the trial court in the proceeding that was appealed. In *Ishmail,* we declared: "A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." Id. at paragraph one of the syllabus. We have consistently enforced this holding. See, e.g., *State v. Dixon,* 101 Ohio St.3d 328, 2004-Ohio-1585, 805 N.E.2d 1042, ¶ 62; *State v. Thomas,* 97 Ohio St.3d 309, 2002-Ohio-6624, 779 N.E.2d 1017, ¶ 50. The fact that a court of appeals can consider additional material under App.R. 26(B), or order a hearing to do so, represents a fundamental difference between such an application and an original appeal. That fact reinforces our view that the App.R. 26(B) process is a separate postconviction process and is not part of the original appeal.

{¶ 14} Second, differences in applicable rules of jurisdiction support our conclusion that App.R. 26(B) provides a distinct postconviction remedy and not a continuation of the original appeal. If a case is pending on appeal in this court, an Ohio court of appeals has no jurisdiction to alter or amend the judgment it previously rendered. In contrast, under our rules of jurisdiction, a court of appeals has the authority to consider an application under App.R. 26(B), even though an appeal of the case is pending before this court. See S.Ct.Prac.R. II(2)(D)(1) ("After an appeal is perfected from a court of appeals * * *, the court

of appeals *is divested of jurisdiction, except * * * to rule on an application timely filed * * * pursuant to App.R. 26 ”*). (Emphasis added.)

{¶ 15} In this respect as well, the procedure under App.R. 26(B) resembles a postconviction proceeding under R.C. 2953.21. Trial courts routinely consider petitions for postconviction relief even while an appeal from the conviction is pending either in the court of appeals or in this court. See, e.g., R.C. 2953.21(C) (“The court shall consider a petition * * * even if a direct appeal of the judgment is pending”); 2953.21(A)(2) (a petition “shall be filed no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal”).

{¶ 16} Thus, the fact that the court of appeals has authority to grant an App.R. 26(B) application, even while the case is on appeal here, demonstrates that the App.R. 26(B) process is not part of the original appeal. It defies logic to assume that two *original* direct appeals are occurring simultaneously in this court and in the court of appeals.

{¶ 17} Third, the App.R. 26(B) process bears a marked resemblance to postconviction review in several other ways. For example, while a trial court is considering a postconviction petition under R.C. 2953.21, the trial court's decision remains in effect. Likewise, while a court of appeals is considering an application filed under App.R. 26(B), and even after it *grants* the application, the previous appellate judgment remains in effect until vacated. See App.R. 26(B)(9). Moreover, App.R. 26(B)(6) requires the court to “state in the entry the reasons for denial.” A parallel provision in R.C. 2953.21(G) requires “findings of fact and conclusions of law.” Under App.R. 26(B)(7), the court of appeals “may limit its review to those assignments of error and arguments not previously considered.” Thus, an applicant under App.R. 26(B) does not start the appeal process all over again, just as the postconviction process under R.C. 2953.21 is not equivalent to a new trial. These similarities support our conclusion that an App.R. 26(B) application initiates a distinct collateral postconviction process separate from the original appeal.

{¶ 18} Fourth, we have not treated any stage of an App.R. 26(B) proceeding as if it were part of the direct appeal in a criminal case. An App.R. 26(B) proceeding represents an attack on the outcome of that appeal, not a part of the appeal. In much the same way, a postconviction petition filed in an Ohio trial court under R.C. 2953.21 represents an attack on the judgment of the trial court and is not part of the original trial. An App.R. 26(B) proceeding moves forward on a schedule different from that of the direct appeal itself, and indeed the App.R. 26(B) proceeding does not begin until the defendant's direct appeal as of right has ended. See App.R. 26(B)(1) (directing criminal defendants who want to

raise ineffective-appellate-assistance claims under the rule to do so "within ninety days from journalization of the appellate judgment").

{¶ 19} To be sure, if an Ohio court of appeals *grants* an application for reopening, App.R. 26(B)(6)(a) directs that court to "appoint counsel to represent the applicant if the applicant is indigent and not currently represented." That provision of the rule—like the rest of App.R. 26(B)—is not, however, compelled by the United States Constitution. Ohio has chosen, through App.R. 26(B), to create an additional and collateral opportunity for raising ineffective-appellate-counsel claims after the appeal as of right is finished. And Ohio has chosen to provide in that rule for the appointment of counsel only for an indigent defendant who raises a "genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." App.R. 26(B)(5).

{¶ 20} The Supreme Court of the United States has "declined to extend the right to counsel beyond the first appeal of a criminal conviction." *Coleman v. Thompson* (1991), 501 U.S. 722, 756, 111 S.Ct. 2546, 115 L.Ed.2d 640. And nothing in the United States Constitution requires that the state provide counsel to every indigent criminal defendant who wants to challenge the work of his or her original appellate attorney. See *Pennsylvania v. Finley* (1987), 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 ("the right to appointed counsel extends to the first appeal of right, and no further").

{¶ 21} Similarly, we have never recognized in our decisions that an indigent accused has a constitutional right to a second appellate lawyer to challenge the effectiveness of his original appellate counsel. If we were to so hold, then logically an accused would have a constitutional right to yet a third appellate lawyer to challenge the adequacy of representation of his second appellate lawyer, and so on ad infinitum. We reject such an approach precisely because the App.R. 26(B) process is not a part of the direct appeal. "[N]either the fundamental fairness required by the Due Process Clause nor the Fourteenth Amendment's equal protection guarantee necessitated that States provide counsel in state discretionary appeals where defendants already had one appeal as of right." *Coleman v. Thompson,* 501 U.S. at 756, 111 S.Ct. 2546, 115 L.Ed.2d 640. See, also, *Jackson v. Johnson* (C.A.5, 2000), 217 F.3d 360, 363–364 (rejecting a state prisoner's argument that "his opportunity to file a motion for rehearing should be considered the last step in his first appeal of right," and noting that "a holding to that effect would surely create a new rule of constitutional law"); *Kitchen v. United States* (C.A.7, 2000), 227 F.3d 1014, 1018 ("once the direct appeal has been decided, the right to counsel no longer applies").

{¶ 22} The fact that Ohio has created this special postappeal opportunity to challenge an appellate judgment does not change Ohio's obligations under the Sixth Amendment. The procedure to appoint counsel under App.R. 26(B)(6)(a) is

one that Ohio has chosen to provide to criminal defendants whose appeal as of right has ended. Ohio had no constitutional obligation to create App.R. 26(B) at all, and it has no constitutional obligation now to provide counsel to those defendants who file applications under that rule.

{¶ 23} For the foregoing reasons, we respectfully disagree with the characterization given to App.R. 26(B) nearly five years ago by the United States Court of Appeals for the Sixth Circuit. That court described the App.R. 26(B) process as "a continuation of activities related to the direct appeal itself" and explained further that "[b]ecause a defendant is entitled to effective assistance of counsel on direct appeal, * * * such an individual must be accorded effective assistance of counsel" to file an App.R. 26(B) application. *White v. Schotten* (C.A.6, 2000), 201 F.3d 743, 752–753.

{¶ 24} As the United States Court of Appeals for the Sixth Circuit has noted: "In Ohio courts, the response to *White* was unanimously hostile." *Lambert v. Warden* (C.A.6, 2003), 81 Fed.Appx. 1, 5, 2003 WL 22071466. Accord *Eads v. Morgan* (N.D.Ohio 2003), 298 F.Supp.2d 698, 705 (noting the "overwhelmingly unfavorable" response of Ohio courts of appeals to *White v. Schotten*). In numerous decisions, the Ohio courts of appeals have concluded that the App.R. 26(B) process is not part of the original appeal but instead is a separate and collateral postconviction process. See, e.g., *State v. Worwell,* Cuyahoga App. No. 80871, 2003-Ohio-4560, 2003 WL 22019526 ("An application to reopen pursuant to App.R. 26(B) is in nature a postconviction petition"); *State v. Collins,* Franklin App. No. 00AP–650, 2002-Ohio-201, 2002 WL 77117; *State v. Dozier* (Jan. 3, 2002), Cuyahoga App. Nos. 56120 and 56121, 2002 WL 42964; *State v. Bragg* (Nov. 26, 2001), Cuyahoga App. No. 58859, 2001 WL 1671424. All of the above decisions came after *White v. Schotten* concluded that applications under App.R. 26(B) were part of the original appeal process under Ohio law.

{¶ 25} We have ourselves explicitly and consistently recognized that the App.R. 26(B) process represents a collateral postconviction remedy. See, e.g., *State v. Robinson* (1996), 74 Ohio St.3d 1518, 660 N.E.2d 472 (describing the App.R. 26[B] process as a "civil, post-conviction matter"); *State v. Boone* (1996), 74 Ohio St.3d 1491, 658 N.E.2d 788 (also describing the App.R. 26[B] process as a "civil, post-conviction matter"). Accord *State v. Sproat* (1995), 74 Ohio St.3d 1442, 656 N.E.2d 342; *State v. Alexander* (1995), 74 Ohio St.3d 1470, 657 N.E.2d 511; *State v. Kirby* (1995), 72 Ohio St.3d 1534, 650 N.E.2d 111. We have used the same descriptive term in numerous other orders. Our own Rules of Practice reinforce the point, for they refer to "appeals involving postconviction relief, including appeals brought pursuant to * * * App.R. 26(B)." S.Ct.Prac.R. II(2)(A)(4)(b).

{¶ 26} Today, we continue to adhere to the position that the App.R. 26(B) process represents a collateral postconviction remedy and is not part of the

original appeal. Accordingly, the answer to the first certified question is no. And because the App.R. 26(B) process is not part of a criminal defendant's direct appeal, we need not answer the second question.

Judgment accordingly.

MOYER, C.J., F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

---

Jim Petro, Attorney General, Douglas R. Cole, State Solicitor, and M. Scott Criss, Assistant Solicitor, for petitioner, John Morgan.

J. Dean Carro, for respondent, Daniel T. Eads.