NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0047n.06
Filed: January 18, 2006

No. 04-4068

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ANTHONY WILLIAMS, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| MARGARET BAGLEY, | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| Respondent-Appellee. | ) | |
| | ) | |
| | ) | |

Before: KENNEDY, Senior Circuit Judge; GIBBONS, Circuit Judge; and DONALD, District Judge.[*]

JULIA SMITH GIBBONS, Circuit Judge. Petitioner-appellant Anthony Williams appeals from the district court's denial of his petition for a writ of habeas corpus. The district court accepted the magistrate judge's conclusions that Williams's claim of ineffective assistance of appellate counsel is procedurally defaulted and that the jury instructions at his trial did not violate due process. For the following reasons, we AFFIRM the ruling of the district court.

I.

The facts of the underlying conviction that led to this appeal were set forth by the state appellate court.

---

[*] The Honorable Bernice Bouie Donald, United States District Judge for the Western District of Tennessee, sitting by designation.

1

During the evening hours of September 21, 1997 and the early morning hours of September 22, 1997, appellant [Williams] gathered together a group of individuals amongst which were Tracy Fears, Brian Thomas and Semmie Shorter. It is disputed as to whether Gerald Hardaway was also a member of the group. The group was formed in order to exact revenge upon Chris Chapman who was believed to have killed appellant's cousin on September 16, 1997. In that Chapman was known to frequent his girlfriend's residence, the group had showered her house with bullets the prior evening. However, since neither Chapman nor his girlfriend were injured or killed in that attack, the group devised a more thorough plan in order to avenge the death of appellant's cousin.

It was decided that the group would firebomb the residence where Chapman and his girlfriend were staying in an attempt to force the individuals from the house. Once the two fled the burning structure, the group would then shoot them. In preparation of this plan, the group obtained ski masks from Wal-Mart. Additionally, firebombs were prepared and guns were gathered. The group entered appellant's van and set off to put their plan into effect. At some point in time during the course of the above described events, Antwon Stroughn joined the group.

When the group arrived in the vicinity of the targeted house, appellant parked the van and the group exited the vehicle with their guns and firebombs. While walking to the site where the plan was to be carried out, Stroughn advised the group that he no longer wished to be involved in the plan. Upon making this decision to abandon the plan, Stroughn was advised that he would be killed if he refused to assist in the firebombing and shooting. Subsequently, both appellant and Shorter shot Stroughn a number of times which resulted in his death. There is some testimony on record which suggests that while the group did not complete their plan, they did nonetheless fire shots at the targeted residence prior to fleeing the area. Stroughn was found dead the next day with a total of four bullet wounds.

*State v. Williams*, No. 98CA74, 2000 WL 309390, at *1 (Ohio Ct. App. Mar. 20, 2000).

Williams was convicted in an Ohio state court of aggravated murder under Ohio Rev. Code 2903.01(A), which states: "No person shall purposely, and with prior calculation and design, cause the death of another . . . ." The state has never argued that Williams had a prior calculation to kill Stroughn. Rather, the trial judge instructed the jury under the doctrine of transferred intent – the intent to kill Chapman could be transferred to satisfy the requirement for aggravated murder. Based on these instructions, the jury convicted Williams and sentenced him to life imprisonment.[1]

---

[1] Williams was also convicted of a firearm specification and sentenced to three years.

Williams appealed his conviction to the Ohio Court of Appeals, alleging three counts of error, including that the jury instruction on transferred intent violated his right to due process. In March 2000, the appellate court denied these assignments of error and affirmed the trial court judgment. *Williams*, 2000 WL 309390, at *3-*7. The Ohio Supreme Court denied Williams' petition for leave to appeal the jury instruction issue. *State v. Williams*, 731 N.E.2d 1140 (Ohio 2000).

In April 2001, Williams filed a petition for a writ of habeas corpus, again alleging that the jury instruction regarding transferred intent violated his constitutional right to due process. After the government filed its response, Williams moved to hold the federal proceedings in abeyance while he petitioned the state appellate court for rehearing under Ohio Appellate Rule 26(B). Rule 26(B) reads:

> A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel. An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.

Williams filed his petition on June 3, 2002, more than two years after the decision of the state appellate court. The petition argued that Williams' appellate counsel had been ineffective for not arguing on appeal that: (1) the trial court should have instructed the jury on lesser offenses; and (2) trial counsel was ineffective for failing to object to the omission. The petition also presented two grounds to excuse the untimely filing: (1) that prison officials had prevented him from accessing his legal materials; and (2) that appellate counsel was ineffective in failing to raise the issues on direct appeal. The appeals court denied the petition, ruling that this did not constitute good cause that would excuse a filing nearly two years after the statutory deadline. The court made factual findings that prison officials had not confiscated legal materials from Williams as he alleged. The court also

3

declined to accept the second rationale, as it would result in all 26(B) petitioners being able to show good cause, which would render meaningless the ninety-day deadline. The Ohio Supreme Court denied review.

Williams then moved the federal district court to amend his habeas petition to include the ineffective assistance of appellate counsel claims. The magistrate judge issued a report, recommending that the ineffective assistance of appellate counsel claim be dismissed as procedurally defaulted and the jury instruction claim be rejected on the merits. The district court adopted the report in its entirety and issued a certificate of appealability. Williams filed a timely appeal to this court, and we now affirm.

II.

In reviewing habeas corpus proceedings, this court reviews the district court's disposition de novo and the findings of fact for clear error. *Cook v. Stegall*, 295 F.3d 517, 519 (6th Cir. 2002). The habeas petitioner has the burden of rebutting, by clear and convincing evidence, the presumption that the state court's factual findings were correct. *See* 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

Absent a showing of cause, a habeas petitioner is generally procedurally barred from litigating claims not fairly presented to the state courts. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). The one exception to procedural default is where the habeas petitioner can demonstrate a sufficient probability that the failure to review will result in a "fundamental miscarriage of justice." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Coleman*, 501 U.S. at 750).

The Sixth Circuit analyzes procedural default under the four-prong standard of *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). Under *Maupin*, the state first must show that: (1) the petitioner

4

failed to comply with an applicable procedural rule; (2) the state courts actually enforced the procedural sanction; and (3) the state procedural bar is an adequate and independent state ground on which the state can foreclose federal review. *Id.* at 138. If the state successfully makes this showing, then the petitioner must demonstrate "cause" for not following the procedural rule and that actual prejudice resulted from the alleged constitutional error. *Id.*

The state has met its burden under this test. Williams concedes that the first two prongs have been satisfied. For the state to satisfy the third prong, it must show that the state procedural rule was "firmly established and regularly followed" at the time it was to be applied. *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). This court has previously held that Rule 26(B) has satisfied this test since at least 1996. *See Monzo v. Edwards*, 281 F.3d 568, 577-78 (6th Cir. 2002). In *Monzo*, the court ruled that it is "well-established" that claims of ineffective assistance of appellate counsel must be raised in a motion for reconsideration within ninety days, as specified by Rule 26(B). *Id.* The court also found that Ohio law provided "sufficient guidance" as to what would constitute "good cause" for the purposes of Rule 26(B). *Id.* at 578.

In an attempt to show that Rule 26(B) is not regularly followed in Ohio state courts, Williams cites an unpublished decision of the Eighth Ohio Judicial District. *State v. Chu*, Nos. 75583, 75689, 2002 WL 1308353 (Ohio Ct. App. June 6, 2002). The court in that case noted a number of occasions in which that particular district "overlooked" the procedural requirements of Rule 26(B) and proceeded to the merits. *Id.* ¶ 30. Williams, though, points to no published opinion, nor any opinion of the Ohio Supreme Court or other Ohio appellate courts, which holds that courts are not bound by Rule 26's procedural requirements. The citation of a few unpublished decisions from one

5

appellate district is insufficient to overcome the holding of this court that Rule 26(B) is both "firmly established and regularly followed."

As the state has met its burden of showing failure to comply with a valid procedural rule, Williams must show "cause" for not following the procedural rule and that actual prejudice resulted. Williams cannot demonstrate a valid reason for failing to comply with Rule 26(B), so no analysis of prejudice is necessary. Williams does not appeal the magistrate's rejection of the two arguments raised in the district court: that he did not comply because he lacked legal skills and that officers at the prison prevented him from accessing legal materials. Rather, Williams puts forth a similar argument to the one raised in state court: "[i]neffective assistance of appellate counsel for counsel's failure to raise a colorable claim presented below." This claim is susceptible to two readings but is meritless under both.

First, Williams cannot claim ineffective assistance of counsel for his attorney's failure to timely file a 26(B) petition because he had no right to counsel at that stage. Case law establishes "that the right to appointed counsel extends to the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). It does not extend to discretionary appeals. *Id.* The Supreme Court of Ohio has held that a motion under Rule 26(B) is a discretionary appeal, and thus, there is no right to counsel under the Sixth Amendment. *Morgan v. Eads*, 818 N.E.2d 1157, 1160-62 (Ohio 2004). Williams cannot use this argument to show cause for his failure to comply with the procedural rule.

Second, Williams cannot excuse his failure to comply with the state procedural rule because his counsel was ineffective in the direct appeal. As the state appellate court reasoned, allowing a petitioner to make such a claim would read the 90-day deadline out of Rule 26(B), because *all* petitioners would have cause. Moreover, as the Supreme Court has stated, an ineffective assistance

6

of counsel claim asserted as cause for procedural default of another federal claim can itself be procedurally defaulted. *Edwards*, 529 U.S. at 452-53. Williams had the opportunity to file a claim of ineffective assistance of appellate counsel, either within ninety days or with a showing of good cause. He did not take advantage of this opportunity and thus, the panel cannot consider his claim.

Williams' only remaining argument is that failure to grant his petition will result in a "fundamental miscarriage of justice" because he is "actually innocent." *Coleman*, 501 U.S. at 750. As Williams has put forth no new reliable evidence to establish his factual innocence, this claim too must fail. *Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 427 (6th Cir. 2003).

III.

Williams also claims that the jury instructions regarding transferred intent violate his constitutional rights to due process. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas corpus should not be granted unless the previous state court adjudication "resulted in a decision that (1) 'was contrary to . . . clearly established Federal law, as determined by the Supreme Court of United States,' or (2) 'involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.'" *Williams v. Taylor*, 529 U.S. 362, 412 (2000) (citing 28 U.S.C. § 2254(d)(1)).

The Ohio Supreme Court declined to review the appropriateness of the jury instructions regarding transferred intent; thus, we look to the opinion of the state appellate court. The opinion of that court makes no reference to Supreme Court precedent, so the only question for this court is whether the adjudication was "contrary to" clearly established federal law.[2] The "contrary to" clause

---

[2] The state court opinion only addresses the issue of *whether* the jury should have been instructed under transferred intent (the court said yes). It did not analyze the *substance* of those instructions.

7

allows a federal habeas court to grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or facts. *Williams v. Taylor*, 529 U.S. at 412-13. In making this determination, a federal court may only look to the holdings, as opposed to dicta, of the Supreme Court's decisions at the time of the relevant state-court decision. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

Williams contends that the state court decision violates *In re Winship*, 397 U.S. 358 (1970), and *Mills v. Maryland*, 486 U.S. 367 (1988). Under *Mills*, if a jury verdict can be supported on one ground, but not on another, and the court is uncertain as to which ground was relied upon by the jury, then the verdict must be set aside. 486 U.S. at 376. Williams argues that the jury instruction regarding transferred intent was ambiguous and could have been read by the jury in a way that relieved the government of the burden of proving all elements of the crime beyond a reasonable doubt, as required by *Winship*, 397 U.S. at 364. Williams claims that the uncertainty regarding how the jury interpreted the instructions should be resolved in his favor. *See Mills*, 486 U.S. at 376.

Williams was indicted under Ohio Rev. Code 2903.01(A), which states, "No person shall purposely, and with prior calculation and design, cause the death of another . . . ." The Ohio Supreme Court has held that a person can be convicted under this statute, even if he does not intend the death of the victim, through the doctrine of transferred intent.

> [A] calculated decision to kill is not altered by the fact that the scheme is directed at someone other than the actual victim. Therefore, we hold that if one purposefully causes the death of another and the death is the result of a scheme designed to implement the calculated decision to kill someone other than the victim, the offender is guilty of aggravated murder in violation of R.C. 2903.01(A).

*State v. Sowell*, 530 N.E.2d 1294, 1304 (Ohio 1988) (quoting *State v. Solomon*, 421 N.E.2d 139, 142 (Ohio 1981)). Williams argues that the jury instruction regarding transferred intent does not require

8

the government to prove the necessary elements of 2903.01(A) beyond a reasonable doubt. *See Winship*, 397 U.S. at 364. The pertinent instruction reads:

> If you find that sometime during the evening that the defendant developed with prior calculation and design the specific intention to kill another human being and that this intention remained during the time that Antwon Stroughn was killed, then the defendant may be found guilty of aggravated murder as he is charged in the indictment or of complicity to commit aggravated murder. The fact that this particular victim was not the person originally sought by the group does not diminish, nor does it negate the criminal responsibility of the defendant. In other words, if you find that this defendant had developed the specific intention to kill another human being with prior calculation and design and that such intent remained while he committed the homicide of Antwon Stroughn or that he aided and abetted another in committing the aggravated murder of Antwon Stroughn, even though the person actually shot and killed was not the original intended victim, then you may find the defendant guilty of aggravated murder or of complicity to commit aggravated murder.

Williams claims that the jury could have understood this as stating that if he killed someone at any point after making the decision to shoot Chapman he could be convicted under 2903.01(A). He hypothesizes a scenario in which, after forming specific intent regarding Chapman, he is involved in a car accident and shoots the other driver in a fit of rage. Under the jury instruction given, Williams argues, he could improperly be convicted under 2903.01(A).

This argument fails under both prongs of the *Mills* test. First, a reasonable jury likely could not have misinterpreted the instruction in the manner suggested by the traffic accident hypothetical. The instruction specifically states that the intention to kill the original victim must have "remained during the time that Antwon Stroughn was killed." In the traffic accident scenario, a decision would be made to kill Chapman, but would not remain during the unrelated attack on the other driver. In contrast, killing Stroughn resulted directly from Williams' intent to kill Chapman – Williams believed Stroughn was interfering with the premeditated attack. The jury was also instructed that "[t]he fact that this particular victim was not the person originally *sought by the group* does not diminish, nor does it negate the criminal responsibility of the defendant." This indicates that the

9

defendant needed to be in the act of pursuing the original victim for the doctrine of transferred intent to apply. Only if the defendant was in the process of effectuating the original plan would his intent be transferred to the victim.

Even assuming *arguendo* that the instructions are ambiguous, the facts as presented to the jury remove any doubt that they relied on improper grounds in convicting Williams under 2903.01(A). The evidence at trial showed that Stroughn was killed during the execution of the plan to kill Chapman. The killing took place after Williams and his accomplices arrived at the scene, had exited the van and were walking towards Chapman's house. Unlike the traffic accident hypothetical, the killing of Stroughn was directly related to the scheme to kill Chapman, and thus, the doctrine of transferred intent was applied properly. There is not a substantial possibility that the jurors based the conviction on the mere intent to kill Chapman without conduct in furtherance of that intent. The state court decision was not contrary to *Mills* or any other clearly established federal law.

IV.

For the foregoing reasons, we AFFIRM the ruling of the district court.