[Cite as *State v. Jordan*, 2016-Ohio-5709.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 103813

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ANTONIO JORDAN

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-595432-A

**BEFORE:** Boyle, J., McCormack, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** September 8, 2016

**ATTORNEY FOR APPELLANT**

Mary Catherine O'Neill
50 Public Square, Suite 1900
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Mahmoud S. Awadallah
          Andrew J. Santoli
          David Schwark
Assistant County Prosecutors
Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, J.:

{¶1}   Defendant-appellant, Antonio Jordan, appeals his convictions and sentence.

He raises four assignments of error for our review:

> 1. The trial court erred by sentencing appellant to multiple consecutive sentences.
>
> 2. Appellant received ineffective assistance of counsel during his plea negotiations.
>
> 3. The trial court erred by proceeding to sentence the appellant when it was clear the plea had been involuntary.
>
> 4. The trial court erred by sentencing appellant for the crime of murder, in violation of R.C. 2903.02, as opposed to sentencing appellant for the crime of involuntary manslaughter in violation of R.C. 2903.03.

{¶2}   Finding no merit to his arguments, we affirm.

## I.   Procedural History

{¶3}   In May 2014, in Cuyahoga C.P. No. CR-13-581343-A, Jordan pleaded guilty to drug trafficking in violation of R.C. 2925.03(A)(2).   The trial court sentenced Jordan to two years of community control sanctions and reserved a sentence of 12 months if Jordan violated the terms of his community control.

{¶4}   In May 2015, Jordan was indicted in another case, Cuyahoga C.P. No. CR-15-595432-A, on nine counts, including one count each of aggravated murder, murder, felonious assault, voluntary manslaughter, aggravated assault, discharging a firearm on or near prohibited places, having a weapon while under a disability, and two counts of endangering children.   All of the counts except for the weapons disability

count and the endangering children counts carried one- and three-year firearm specifications.

{¶5} In September 2015, Jordan pleaded guilty to an amended indictment of voluntary manslaughter in violation of R.C. 2903.03(A), a first-degree felony, with the one- and three-year firearm specifications; aggravated assault in violation of R.C. 2903.12(A)(1), a fourth-degree felony; discharging a firearm at or near prohibited places in violation of R.C. 2923.162(A)(3), a first-degree felony; having a weapon while under a disability in violation of R.C. 2923.13(A)(3), a third-degree felony; and the two counts of endangering children in violation of R.C. 2919.22(A), first-degree misdemeanors. The remaining counts were nolled.

{¶6} In November 2015, the trial court held a joint sentencing hearing in both cases, Case Nos. CR-13-581343-A (for violating his community control sanctions) and CR-15-595432. Prior to sentencing, the trial court merged the voluntary manslaughter count with the aggravated assault count; the state elected to proceed on voluntary manslaughter.

{¶7} In Case No. CR-15-595432-A, the trial court sentenced Jordan to three years in prison for the firearm specifications, to be served prior to and consecutive to 11 years in prison for voluntary manslaughter; nine years in prison for discharging a firearm at or near prohibited places, to be served concurrently to voluntary manslaughter; and 24 months in prison for having a weapon while under a disability to be served consecutively to voluntary manslaughter, for a total of 16 years in prison. The trial court also

sentenced Jordan to six months in jail on each count of child endangering and ordered that they be served concurrent to each other and to all other time.

**{¶8}** In Case No. CR-13-581343-A, the trial court sentenced Jordan to 12 months in prison to be served consecutively to the sentence imposed in Case No. CR-15-595432-A. Thus, the aggregate prison term for both cases was 17 years in prison.

**{¶9}** It is from these judgments that Jordan appeals.

## II. Plea and Sentencing Hearings

**{¶10}** At the plea hearing, the state informed the court of the factual basis that led to the charges. Jordan was in a car with a woman and her two children. The woman was on the phone with her children's father, who was the victim in this case. The woman and the victim were attempting to arrange a meeting spot where the victim could pick up the children. They agreed to meet at a market. On the way to the market, Jordan, the woman, and the victim got into several "heated" arguments on a speaker phone. When Jordan and the woman arrived at the market, the woman went into the market, while Jordan and the children remained in the car. At some point, the victim arrived. Jordan and the victim got into an argument outside of the car. Jordan pulled out a gun and shot the victim in front of the children. Jordan got back in the vehicle with the children still in the car. He drove a short distance away, stopped and removed both children from the car, and placed them on the corner of the street. One of the children was an infant, and the other child was a toddler. A bystander saw Jordan shoot

the victim, drive away, stop at the corner, and place the two children on the corner. The witness picked up the children and called the police. The witness only saw Jordan with a gun in his hand, not the victim.

{¶11} The state also reviewed the plea deal and maximum penalties involved with each count. The state further informed the court that the voluntary manslaughter and aggravated assault counts were the only counts that merged for purposes of sentencing.

{¶12} The court then asked Jordan's two defense attorneys if that is how they understood the plea. They responded that it was, but then one of them added:

> Your Honor, I would just add for the record, so it is clear, there was an outstanding issue regarding some testing. We talked to our client about that. He understands that the county coroner is testing some potentially exculpatory materials.
>
> I talked to the court and the state about that, and he is aware that that testing is going on, and he would still like to proceed forward with today's plea.[1]

{¶13} The court then asked Jordan if he wished to enter into a plea that day. Jordan responded that he did. Further, in response to the court's questioning, Jordan informed the court that he was 40 years old, was a United States citizen, had a two-year Associates of Arts degree, that he was on disability from serving in the military, and that he was on community control sanctions in another case before the court. The court

---

[1]At the sentencing hearing, the facts surrounding this "testing" is made more clear. Jordan apparently claimed that he retrieved a gun from the victim after shooting him. Defense counsel turned the gun over to the state for testing a week before the scheduled trial date. On the date of the scheduled trial, Jordan pleaded guilty despite the fact that the DNA testing had not yet come back on the gun.

made sure that Jordan understood that by pleading guilty, he could violate his probation in the other case.

**{¶14}** The court then reviewed Jordan's constitutional rights with him and made sure that he understood that by entering into the plea, he was waiving those rights.

**{¶15}** The court also reviewed the maximum penalty associated with each charge and the parameters and nuances of postrelease control with Jordan, as well as the fact that only the voluntary manslaughter and aggravated assault counts merged. Jordan then pleaded guilty to each count.

**{¶16}** The court asked Jordan if he was satisfied with his defense attorneys. Jordan replied, "Oh, yes, sir." Jordan further told the court that no one made any promises or threats to him to get him to enter into the plea, and Jordan agreed that his entering into the plea was "voluntarily made of [his] own free will." Finally, the court asked Jordan if he understood that there were no agreements or promises as to what the court would do at sentencing. Jordan responded, "Correct." The court then accepted Jordan's guilty pleas, finding that he made a knowing, intelligent, and voluntary plea and accepted his guilty pleas. The state and both defense counsel told the court that it satisfied Crim.R. 11.

**{¶17}** Defense counsel requested that a presentence investigation report ("PSI") be completed before sentencing, as well as a mitigation of penalty report.

**{¶18}** At the sentencing hearing, the court indicated that it received and reviewed the mitigation of penalty report from the court psychiatric clinic, as well as the PSI.

**{¶19}** The state reviewed the facts of the shooting with the court. While doing so, the state discussed the fact that it had retrieved the victim's cell phone. On the victim's cell phone, the state found two photos that were "of significance." One was a photo of three guns that the mother of the victim's children sent to the victim that were purportedly Jordan's guns. The other photo was a picture of a "small caliber handgun" that the victim had apparently taken on April 12 (presumably 2015, but the record is not clear as to what year). The picture had not been sent to anyone in a text message; it was just a picture of a small gun. The state told the court that it was aware that Jordan had claimed that the victim had a weapon on him, and that Jordan retrieved that weapon after shooting the victim. Defense counsel turned the gun over to the state a week before trial. The gun was tested for DNA, and it was inconclusive for the victim's fingerprints.

**{¶20}** At that point, defense counsel objected, stating that they never saw a photo "of that." The parties had a sidebar off the record. When they were back on the record, defense counsel agreed that the photos were shared with them in discovery, but they said that they could not view them because they were too dark "due to their transmission in the portal." The court asked defense counsel if that changed "any position of the defense." Both defense counsel responded, "No, your honor."

**{¶21}** Jordan's mother spoke to the court on his behalf. Defense counsel then spoke on behalf of Jordan, stating that they would have presented testimony at trial that the victim had a gun and "came at" Jordan. Defense counsel further stated that the

victim was highly intoxicated, almost twice the legal limit. When the victim "came at" Jordan, Jordan "reacted" and shot the victim.

{¶22} Defense counsel further informed the court that Jordan had been in the military. When Jordan came home from the military, he had post traumatic stress disorder ("PTSD"). Defense counsel argued that the victim's death was not the worst form of voluntary manslaughter, which defense counsel asserted was why the state reduced the charge from murder to voluntary manslaughter.

{¶23} Jordan also spoke to the court. He apologized for everything that happened. He denied that he ever spoke to the victim on the phone. He said he never met the victim prior to the day in question. Jordan said that he had four witnesses, whom he named, saying they were present at the time of the shooting. Jordan stated that the state's witness was a "new acquaintance" of his who he sold drugs to. Jordan opined that the state's witness was not credible. He said that when he dropped the children off at the corner, he was "30 feet" from the market, where his "new acquaintance" picked them up.

{¶24} Next, Jordan stated that the state "reneged" from the deal because the state previously said they would "run everything concurrent." The court interrupted Jordan, saying "wait a minute * * * that was not the deal." The court stated, "now you are getting into * * * the confidence this court has in the plea." The court said, "I was there, and I was making sure everything was fair." The court reminded Jordan that at the plea hearing, the court made sure that Jordan knew that there were no other mergers besides

the voluntary manslaughter and the aggravated assault. Jordan replied, "Okay. I take that back. I apologize." Jordan apologized to the court three times. The court then said, "all right, I just want to make sure." Jordan then apologized five more times, stating, "I apologize. Okay. I apologize. I misunderstood that, Your Honor. I apologize. Strike that. I apologize to the court and everybody. I apologize."

{¶25} Jordan stated that he just wanted to tell the court that he was defending himself at the time of the shooting. The court reminded Jordan that he pleaded guilty to voluntary manslaughter. Jordan replied, "it's a gray area, Your Honor." Jordan stated that the victim was dead because Jordan had a gun, but if he had not had a gun, he would be dead instead of the victim. Jordan further stated that the only danger the children were in that day was from the victim, not Jordan. Lastly, Jordan apologized to the victim's family.

{¶26} The court stated that the victim's mother was correct when she said that "everyone lost here." The court said, "One mother lost her son. Murdered. Killed. Another mother is losing her son to incarceration." The court discussed the purposes and principles of sentencing, as well as the seriousness and recidivism factors. The court stated that it did not know what happened that night, but in looking at the seriousness of the crime, the victim was "killed" as a result of Jordan's conduct.

{¶27} The court told Jordan that as a result of his community control sanctions in the first case, that he should not have been there selling drugs. The court stated to Jordan that he should not have had a gun either. According to Jordan's probation

officer, he tested positive for PCP on April 15, 2015. The court said that it would consider that fact as well. The court noted that in looking at the facts, it was aware that there was "provocation" as that was indicated in the plea bargain from aggravated murder to voluntary manslaughter. But the court also noted that there are many reasons for plea bargains and that it was not going to consider what the plea was.

{¶28} The court then imposed the sentence for each offense. In sentencing Jordan to consecutive sentences, the court stated:

> [T]his Court imposed consecutive sentences because it's necessary to protect and punish, it's not disproportionate, and this court finds that this crime was committed while under a probationary period and the fact that your criminal history shows that consecutive terms are needed to protect the public.
>
> I think the sentence is fair. It reflects the seriousness of your conduct, the seriousness of the crimes charged in this case, and the fact that you should not have nor should you ever have had a weapon with you, and nor should you have been out on the streets being positive for PCP on April 15th.

{¶29} The court also advised Jordan about postrelease control, saying that "if" he got out of prison, he would be subject to a period of five years of mandatory postrelease control.

{¶30} It is from this judgment that Jordan appeals, raising his four assignments of error for our review. We will address his assignments of error out of order and together where necessary for ease of discussion.

## III. Ineffective Assistance of Counsel

{¶31} In his second assignment of error, Jordan argues that he received ineffective assistance of counsel during his plea negotiations, which caused his plea to be involuntary. Jordan points to certain statements made at his plea and sentencing hearings that he claims "made it abundantly clear" that he received ineffective assistance of counsel.

{¶32} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶33} Where a defendant challenges trial counsel's performance in connection with a guilty plea, the defendant can establish the prejudice necessary for an ineffective assistance of counsel claim only by demonstrating that there is a reasonable probability that, but for counsel's deficient performance, he would not have pled guilty to the offense at issue and would have insisted on going to trial. *State v. Williams*, 8th Dist. Cuyahoga No. 100459, 2014-Ohio-3415, ¶ 11, citing *State v. Xie*, 62 Ohio St.3d 521, 524, 584

N.E.2d 715 (1992), and *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *State v. Wright*, 8th Dist. Cuyahoga No. 98345, 2013-Ohio-936, ¶ 12.

{¶34} First, Jordan points to the fact that his counsel "allowed a plea to take place * * * despite knowledge that potentially exculpatory evidence was still in the process of being tested by the coroner's office." We disagree with Jordan that this shows his counsel were ineffective. His counsel informed the court at the beginning of the plea hearing that Jordan wished to proceed with the plea hearing despite the fact that the DNA testing was not completed yet. The trial court asked Jordan if that was true; he responded that it was.

{¶35} Next, Jordan contends that because his counsel admitted at the sentencing hearing that they had never seen the two photos from the victim's cell phone, it "indicates that they had not fully reviewed the discovery presented by the state." One of the photos was a photo of three guns that the mother of the victim's children sent to the victim; the three guns were purportedly Jordan's guns. The second photo was apparently one that the victim had taken of a small caliber gun that was purportedly the victim's own gun. Assuming for the sake of argument that Jordan's counsel were ineffective for failing to look at these photos, Jordan has not established that if he had seen a photo of a gun on the victim's cell phone that was taken ten days before he shot the victim that the photo would have made him want to go to trial. Notably, Jordan had decided to enter into a guilty plea before the results of the DNA testing came back on what Jordan alleged to be the

victim's gun. Thus, we disagree with Jordan that "knowledge of these photographs" would have influenced his decision to enter into the plea.

{¶36} Jordan further maintains that his statements at the sentencing hearing support "the unknowing and involuntary nature of the guilty pleas" because they show that he would have been able to establish that he acted in self-defense and that he would have had four witnesses testify to that fact. He claims the fact that his counsel never subpoenaed these four witnesses prior to the plea, which took place on the scheduled trial date, supports his argument that his counsel "never attempted to put forth a defense" for him.

{¶37} Courts have held that failure to interview and subpoena witnesses who may have offered exculpatory testimony at trial is neglectful and could constitute deficient performance. *State v. Akers*, 11th Dist. Portage No. 95-P-0073, 1997 Ohio App. LEXIS 1354, *23 (Apr. 4, 1997). But a mere allegation that the testimony of a prospective witness may have been helpful is insufficient to establish the prejudice prong of the test for ineffective assistance. *Id*. That is, prejudice cannot be shown when the record before the appellate court contains no indication as to what the testimony of the prospective witnesses would have been. *State v. Bleasdale*, 11th Dist. Ashtabula No. 95-A-0047, 1996 Ohio App. LEXIS 3876, *15-16 (Sept. 6, 1996). Under such circumstances, a claim of ineffective assistance could only be shown in a petition for postconviction relief. *See State v. Cooperrider*, 4 Ohio St.3d 226, 448 N.E.2d 452 (1983). *See also State v. Coulverson*, 10th Dist. Franklin No. 01AP-893, 2002 Ohio

App. LEXIS 1290, *20 (Mar. 21, 2002); *State v. Gales*, 9th Dist. Lorain No. 00CA007541, 2000 Ohio App. LEXIS 5428, *24 (Nov. 22, 2000) (counsel's mere failure to subpoena witnesses is not a substantial violation of an essential duty to a client in the absence of a showing that testimony of any one or more of the witnesses would have assisted the defense).

**{¶38}** Jordan further contends that his counsel was ineffective because they allowed him to plea without ever requesting a psychological exam be conducted despite the fact that he had "well documented issues with mental health." In support of this issue, Jordan points to the fact that his counsel requested a mitigation of penalty report be conducted by the court's mental health clinic in preparation for sentencing. The fact that Jordan's counsel requested a mitigation of penalty report be conducted prior to sentencing, however, does not establish that Jordan has "well documented issues with mental health."

**{¶39}** We find, after a reviewing the entire record, that there is nothing demonstrating that a psychological evaluation was needed. Despite Jordan informing the court that he had PTSD from being in the military, there is no evidence throughout the proceedings that Jordan displayed any type of behavior that would alert trial counsel to request a psychological evaluation or request that the case be transferred to the mental health docket.

**{¶40}** Finally, Jordan argues that he was informed by both counsel that the counts would run consecutively. In raising this argument, Jordan "concedes that the record

supports the state's indication that no agreement had been made regarding merger," but asserts that it serves to reinforce the lack of voluntariness of his plea. We disagree. At the plea hearing, the trial court made sure that no one promised Jordan anything in exchange for his plea, including the court. Moreover, it is a fundamental principle of appellate review that a reviewing court is limited to the record of proceedings at trial. *Morgan v. Eads*, 104 Ohio St.3d 142, 2004-Ohio-6110, 818 N.E.2d 1157, ¶ 13; App.R. 12(A)(1)(b); App.R. 16(A)(7).

{¶41} Jordan's second assignment of error is overruled.

## IV. Voluntariness of Plea

{¶42} In his third assignment of error, Jordan argues that the trial court erred in proceeding to sentence him after it became clear that his plea was involuntary. In arguing this point, he relies on the issues that he raised in his second assignment of error.

{¶43} The underlying purpose of Crim.R. 11(C) is to convey certain information to a defendant so that he or she can make a voluntary and intelligent decision regarding whether to plead guilty. *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981). "The standard for reviewing whether the trial court accepted a plea in compliance with Crim.R. 11(C) is a de novo standard of review." *State v. Cardwell*, 8th Dist. Cuyahoga No. 92796, 2009-Ohio-6827, ¶ 26, citing *State v. Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163 (1977). "It requires an appellate court to review the totality of the circumstances and determine whether the plea hearing was in compliance with Crim.R. 11(C)." *Id.*

{¶44} Crim.R. 11(C)(2) provides in pertinent part that in felony cases the court may refuse to accept and shall not accept a plea of guilty without first addressing the defendant personally and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶45} A trial court must strictly comply with the Crim.R. 11(C)(2)(c) requirements that relate to the waiver of constitutional rights. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 18. Under the more stringent standard for constitutionally protected rights, a trial court's acceptance of a guilty plea will be affirmed only if the trial court engaged in meaningful dialogue with the defendant which, in substance, explained the pertinent constitutional rights "in a manner reasonably intelligible to that defendant." *Ballard* at paragraph two of the syllabus.

{¶46} With respect to the nonconstitutional requirements of Crim.R. 11, set forth in Crim.R. 11(C)(2)(a) and (b), reviewing courts consider whether there was substantial compliance with the rule. *Veney* at ¶ 14-17. "Substantial compliance means that under

the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990); *Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163. "[I]f it appears from the record that the defendant appreciated the effect of his plea and his waiver of rights in spite of the trial court's error, there is still substantial compliance." *State v. Caplinger*, 105 Ohio App.3d 567, 572, 664 N.E.2d 959 (4th Dist.1995).

{¶47} Further, a defendant must show prejudice before a plea will be vacated for a trial court's error involving Crim.R. 11(C) procedure when nonconstitutional aspects of the colloquy are at issue. *Veney* at ¶ 17. The test for prejudice is whether the plea would have otherwise been made. *Id.*; *see also State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462.

{¶48} After a thorough review of the plea hearing, we conclude that the trial court fully complied with Crim.R. 11 in making sure that Jordan's plea was voluntarily, knowingly, and intelligently entered. The court reviewed the nature of the charges with Jordan, as well as the maximum penalty involved with each charge. The court further informed Jordan of the effect of the plea and ensured that he understood the effect of the plea. And the court also informed Jordan of the constitutional rights he was waiving and made sure that he understood that by pleading guilty, he was waiving those rights.

{¶49} Further, at the sentencing hearing, when the trial court interrupted Jordan because he was undermining the court's confidence in the plea with his statements that

the state reneged on the deal, Jordan apologized to the court numerous times and stated that he was wrong for implying that he believed he would get concurrent sentences.

{¶50} Accordingly, Jordan's third assignment of error is overruled.

### V. Consecutive Sentences

{¶51} In his first assignment of error, Jordan argues that the trial court erred when it sentenced him to consecutive sentences.

{¶52} R.C. 2953.08(G)(2) provides that our review of felony sentences is not an abuse of discretion. An appellate court must "review the record, including the findings underlying the sentence or modification given by the sentencing court." *Id*. If an appellate court clearly and convincingly finds either that (1) "the record does not support the sentencing court's findings under [R.C. 2929.14(C)(4)]," or (2) "the sentence is otherwise contrary to law," then "the appellate court may increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing." *Id*.

{¶53} R.C. 2929.14(C)(4) requires trial courts to engage in a three-step analysis when imposing consecutive sentences. First, the trial court must find that "consecutive service is necessary to protect the public from future crime or to punish the offender." *Id*. Next, the trial court must find that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Id*. Finally, the trial court must find that at least one of the following applies: (1) the offender committed one or more of the multiple offenses while awaiting trial or

sentencing, while under a sanction imposed under R.C. 2929.16, 2929.17, or 2929.18, or while under postrelease control for a prior offense; (2) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or (3) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.    R.C. 2929.14(C)(4)(a) - (c).

{¶54} The Ohio Supreme Court expressly rejected the claim that a trial court must give a "talismanic incantation of the words of the statute" when imposing consecutive sentences.    *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37.  Indeed, the Supreme Court stated that "a word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld."    *Id*. at ¶ 29.

{¶55} Moreover, a trial court is required not only to make the statutory findings required for consecutive sentences at the sentencing hearing, but also to incorporate its findings into its sentencing entry.    *Id.* at the syllabus.

{¶56} After a review of the sentencing hearing in this case, we find that the trial court made the required R.C. 2929.14(C)(4) findings and that the record supports those findings.    Although the trial court did not use the exact language of the statute, this court

can discern that it engaged in the proper analysis and made the required findings. The court specifically stated that consecutive sentences were "necessary to protect and punish," were "not disproportionate," that Jordan committed these crimes while under community control sanctions, and that consecutive terms were "needed to protect the public." The court further found that consecutive sentences reflected "the seriousness" of the crimes and the fact that Jordan should not have had a weapon or tested positive for PCP.

{¶57} Jordan argues that the trial court failed to make one of the three findings under R.C. 2929.14(C)(4)(a) through (c). He asserts that although he "was serving a term of community control sanctions, there is no indication that [his] history of criminal conduct demonstrates that consecutive sentences are required." He further claims that there was no evidence of a "course of conduct." First, a trial court need only find that an offender was on probation or community control when he or she committed the new offense *or* that at least two or more offenses were committed as part of a course of conduct *or* that an offender's criminal history demonstrates that consecutive sentences are necessary to protect the public. As Jordan stated, he was on community control when he shot and killed the victim in this case. This satisfies the third finding.

{¶58} Jordan further argues that the trial court failed to make the required findings for consecutive sentences for the 12 months it imposed for Case No. CR-13-581343-A. We disagree. The trial court's consecutive sentence findings included facts regarding Jordan's probation violation.

**{¶59}** Further, the trial court informed Jordan at the original sentencing hearing in Case No. CR-13-581343-A that if he violated the terms of his community control sanctions, it would "result in more restrictive sanctions or a prison term of 12 months." At the joint-sentencing hearing on the new case and the community control violations case, the court explained that Jordan violated the terms of his community control by not only shooting and killing the victim, but by even just having the gun. Further, Jordan tested positive for PCP while on community control sanctions and was selling drugs. Thus, we find that the record supports the trial court's findings under R.C. 2929.14(C)(4).

**{¶60}** Accordingly, we overrule Jordan's first assignment of error.

## VI. Sentencing for Voluntary Manslaughter versus Murder

**{¶61}** In his fourth assignment of error, Jordan asserts that the trial court improperly sentenced him for murder, rather than voluntary manslaughter. He claims that the court used consecutive sentence to effectively sentence him for murder. He further points to two comments made by the trial court that he claims shows that the trial court intended to punish him for murder: (1) "one mother lost her son. Murdered. Killed[,]" and (2) "[i]f you get out of prison, you're subject to postrelease control."

**{¶62}** After reviewing the entire record in this case, we find no error on the part of the trial court. Based on the felonies that Jordan pleaded guilty to (besides aggravated assault because it merged), which were voluntary manslaughter, a first-degree felony, with one- and three-year firearm specifications, discharging a firearm at or near prohibited places, a first-degree felony, and having a weapon while under a disability, a

third-degree felony, the trial court could have sentenced Jordan to a maximum of 28 years in prison if he had ordered them all to be served consecutively. We have already determined that the trial court properly imposed consecutive sentences and the record supported such imposition. But for these offenses, the trial court sentenced Jordan to 16 years in prison, considerably less than the maximum. Thus, we find no merit to Jordan's arguments.

**{¶63}** Further, regarding the two comments made by the trial court that Jordan claims support his argument, he is looking at them in a vacuum. When viewing them in the context of the entire proceedings, they do not support Jordan's claim that the trial court intended to sentence him for murder instead of voluntary manslaughter. The trial court properly sentenced Jordan within the confines of the sentencing statutes.

**{¶64}** Jordan's fourth assignment of error is overruled.

**{¶65}** Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

MARY J. BOYLE, JUDGE

TIM McCORMACK, P.J., CONCURS;
EILEEN T. GALLAGHER, J., DISSENTS (WITH SEPARATE OPINION)


EILEEN T. GALLAGHER, J., DISSENTING:

**{¶66}** I concur with the majority's resolution of Jordan's second, third, and fourth assignments of error. However, I respectfully dissent from the majority's determination that the trial court made the findings necessary to run the sentence imposed in Case No. CR-13-581343-A consecutive to the sentences imposed in Case No. CR-15-595432-A.

**{¶67}** In this case, the trial court made the following statement when imposing consecutive sentences:

> As for the consecutive prison terms, *on the having weapon while under disability to the voluntary manslaughter*, this court imposed consecutive sentences because it's necessary to protect and punish, it's not disproportionate, and this court finds that this crime was committed while under a probationary period and the fact that your criminal history shows that consecutive terms are needed to protect the public. I think the sentence is fair. It reflects the seriousness of your conduct, the seriousness of the crimes charged in this case, and the fact that you should not have nor should you ever had a weapon with you, and nor should you have been out on the streets being positive for PCP on April 15th.

(Emphasis added.)

**{¶68}** I agree with the majority's conclusion that the foregoing colloquy was sufficient to satisfy the findings requirements of R.C. 2929.14(C)(4) with respect to Jordan's voluntary manslaughter and having a weapon while under disability convictions

in Case No. CR-15-595432-A. However, the statement excludes consideration of the 12-month prison term imposed on Jordan's violation of community control in Case No. CR-13-581343-A, which was ordered to run consecutive to the sentences imposed in Case No. CR-15-595432-A. The court simply did not address Case No. CR-13-581343-A during its discussion of the relevant R.C. 2929.14(C)(4) findings.

{¶69} Accordingly, I would sustain Jordan's first assignment of error regarding the trial court's failure to make the necessary R.C. 2929.14(C)(4) findings for the sentence imposed in Case No. CR-13-581343-A.