OPINION
{¶ 1} Plaintiff-appellant, Beatrice Williams (hereinafter" appellant"), appeals from a judgment of the Court of Claims of Ohio dismissing her claim against the defendant-appellee, the Ohio Department of Rehabilitation and Corrections (hereinafter "DRC"), for a violation of R.C. 2933.32 and invasion of her privacy stemming from a strip search conducted by an officer of the Ohio Adult Parole Authority (hereinafter "APA"), as well as a dismissal of appellant's entitlement to attorney's fees. For the following reasons, we reverse and remand to the trial court for further proceedings.
 {¶ 2} On November 1, 2000, APA Officer Jennifer Tibbetts, two other APA officers, and two Middletown police officers arrived at appellant's home to arrest her husband, Robert Washington, for violating parole. Appellant greeted the officers at the door and they followed her into the home. They immediately arrested Mr. Washington. After the initial arrest, the officers commenced a search of the home. Throughout these activities appellant was continuously monitored in the living room.
 {¶ 3} The subsequent search revealed drug paraphernalia, a small amount of crack cocaine, a nightstick, two knives, some ammunition, and a pornographic tape and photographs. During the search, appellant sat calmly in the living room and did not show any outward signs of suspicious behavior. Upon completion of the search of the residence, Officer Tibbetts asked if anyone had searched appellant. Officer Tibbetts received a negative answer to her inquiry and proceeded to lead appellant to a bathroom to conduct a search.
 {¶ 4} Upon entering the bathroom Officer Tibbetts commenced a quick pat down that she stated did not arouse any suspicion. She then requested appellant lift her shirt and "shake out" her bra. Appellant complied with the request, exposing her bra and partially exposing her breasts. No weapons or drugs of any kind were found on appellant's person. After the search, the officers ran a check for outstanding warrants against appellant. She was then arrested for passing a bad check.
 {¶ 5} On December 10, 2001, appellant instituted an action in the Ohio Court of Claims asserting a claim of invasion of privacy and right to seclusion, as well as a violation of R.C. 2933.32. Specifically, appellant asserted DRC was liable because a parole officer conducted an illegal strip search of her person without a warrant or probable cause, in violation of the Fourth andFourteenth Amendments of the United States Constitution, and in violation of R.C. 2933.32. DRC denied it strip searched appellant, or alternatively, if its officer did conduct a strip search, such a search was conducted legally. On August 12, 2003, the trial court conducted a bench trial on the issue of liability of DRC and dismissed all of appellant's invasion of privacy claims as well as her request for attorney fees. This appeal followed.
 {¶ 6} Appellant timely appeals and asserts the following assignments of error:
[1.] The trial court erred by finding that the State was not liable for the strip search of Washington.
[2.] The trial court erred by failing to award attorney's fees to Washington.
 {¶ 7} DRC asserts the following cross-assignment of error:
The trial court erred by not holding that parole officer Tibbetts did not conduct a strip search of Washington.
 {¶ 8} In the first assignment of error, appellant argues the trial court erred by applying the less stringent standard of reasonable suspicion, required for a Terry pat-down, when it should have applied a probable cause standard for a more intrusive search. Appellant asserts Officer Tibbetts violated R.C. 2933.32(B), which sets forth requirements for who may conduct a strip search, when a strip search is authorized, and in what manner. Finally, appellant contends Officer Tibbetts violated appellant's constitutional right to privacy as defined by the Fourth and Fourteenth Amendments.
 {¶ 9} In Ohio, a strip search must be conducted in accordance with the requirements set forth in R.C 2933.32(B). R.C.2933.32(B) states in pertinent part:
(1) Except as authorized by this division, no law enforcement officer, other employee of a law enforcement agency, physician, or registered nurse or licensed practical nurse shall conduct or cause to be conducted a body cavity search or a strip search.
(2) A * * * strip search may be conducted if a law enforcement officer or employee of a law enforcement agency has probable cause to believe that the person is concealing evidence of the commission of a criminal offense, including fruits or tools of a crime, contraband, or a deadly weapon * * * that could not otherwise be discovered. In determining probable cause for purposes of this section, a law enforcement officer or employee of a law enforcement agency shall consider the nature of the offense with which the person to be searched is charged, the circumstances of the person's arrest, and, if known, the prior conviction record of the person.
(3) A * * * strip search may be conducted for any legitimate medical or hygienic reason.
* * *
(5) Unless there is a legitimate medical reason or medical emergency that makes obtaining written authorization impracticable, a * * * strip search shall be conducted only after a law enforcement officer or employee of a law enforcement agency obtains a written authorization for the search from the person in command of the law enforcement agency, or from a person specifically designated by the person in command to give a written authorization * * *.
 {¶ 10} Because written permission was neither sought nor given, and it is undisputed there was no medical reason to conduct the search, R.C. 2933.32(B)(3) and (B)(5) do not apply. As such, for the strip search to be lawful, Officer Tibbetts needed probable cause to conduct a strip search.[1]
 {¶ 11} It has been clearly established that a full search of a person without a warrant and lacking probable cause violates the protections against random search and seizures as provided by the Fourth and Fourteenth Amendments. See Lo-Ji Sales, Inc. v.New York (1979), 442 U.S. 319, 99 S.Ct. 2319; Marshall v.Barlow's, Inc. (1978), 436 U.S. 307, 311, 98 S.Ct. 1816; Ybarrav. Illinois (1979), 444 U.S. 85, 91-92, 100 S.Ct. 338. However, in Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868, the United States Supreme Court carved out an exception to the probable cause requirement mandated by the Fourth andFourteenth Amendments. The court held that a peace officer may conduct a protective frisk for weapons when there is reasonable suspicion that an officer's safety is in danger. Id. at 10. The standard as defined in Terry states that:
[W]here a police officer observes unusual conduct which leads him to reasonably conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous * * * he is entitled for protection of himself and others in the area toconduct a carefully limited search of the outer clothing of suchpersons in an attempt to discover weapons * * *.
(Emphasis added.) Id. at 30.
 {¶ 12} Accordingly, Terry authorizes a pat down of the outer clothing. An officer must "in justifying the particular intrusion * * * be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. However, once an officer establishes reasonable suspicion and conducts the frisk, the officer must stop the search if nothing is revealed. The officer may proceed to a more intrusive search only upon making a probable cause determination. Id. at 10, 18 and 30.
 {¶ 13} The scope of the Terry exception was further analyzed in Ybarra, supra. The Ybarra court held officers must have a reasonable belief or suspicion that their protection or safety may be endangered before conducting the frisk. Id. at 93. See, also, State v. Curry (1994), 95 Ohio App.3d 93, 96
(stating a "reasonable search for weapons is allowed absent probable cause if the officer has specific and articulable facts which, along with the rational inferences from the facts, justify the search.") The standard is whether a reasonably prudent person would believe his or her safety is jeopardized. Ybarra, at 91.
 {¶ 14} A parole officer also has the authority to search a third party when arresting a parolee, while the third party is present at the time of the arrest. Ohio v. Barnes (Sept. 6, 1996), Montgomery App. No. 15149. Based on the third party's location and suspicious appearance in Barnes, the officers felt their safety was at risk and conducted a pat down. The Barnes
court held the officers' frisk of Barnes was supported based on the confined space the officers were working in, drugs in extremely close proximity to the third party, his demeanor, the officers' inability to see his hands, unusual attire (a coat on a warm day), and his movement toward the officer. Id. at 11-12. However, probable cause for a more intrusive search was not an issue in that case.
 {¶ 15} We will now examine the search of appellant's home, and the subsequent personal search. After the officers entered the home to arrest appellant's husband, appellant sat in the living room while the officers searched her house. The relevant portions of Officer Tibbetts' testimony on direct and cross-examination with respect to her suspicions about the appellant are set forth below:
Q. Had she engaged in suspicious behavior prior to that that led you to believe or conclude that she had contraband or weapons on her person?
A. There was no way I could — the weapons that we already found, who they belonged to know. I had no idea whose they were in the residence.
Q. You had no clue, just speculation?
A. Right.
Q. Could have been anybody?
A. Right?
* * *
A. Well, I asked her first all if I could pat her down.
Q. What did she say?
A. Yes.
Q. Okay
A. Then I did a patdown.
* * *
Q. Was it a quick patdown?
A. Yes.
* * *
Q. You're saying you had probable cause to search Mrs. Washington?
A. I'm saying I had suspicion to believe that there was enough evidence that she may jeopardize the safety of our officers, correct.
* * *
Q. You would know the difference between reasonable articulable suspicion and reasonable cause when it comes to search of persons?
A. No. We didn't get into the technicalities of the case.
Q. We can agree * * * you didn't know anything about her record?
A. That's correct.
Q. She presented herself to the door?
A. That's correct.
Q. She didn't make any furtive movements or gestures with her hands?
A. That's correct.
Q. You didn't see any bulky material on her person that would suggest to you that she had contraband or weapons on her person?
A. Not to my visual. She had a baggy T-shirt on.
Q. You say it's not unusual for people to wear baggy T-shirts?
A. Right.
* * *
Q. The only evidence you had that was concern to you was the ammunition?
* * *
Q. Every time that she saw you she was cooperative with you?
A. Correct.
* * *
Q. Of course, as you made your visual observations of Mrs. Washington you had no suspicion or belief that she had a weapon in her bra?
A. There's no way I could know whether or not she had.
Q. So it would be a guess?
(Tr. 56, 79, 83-86, and 88-89.)
 {¶ 16} Accordingly, Officer Tibbett's initial suspicion that appellant had a weapon was based on the discovery of ammunition. This is sufficient evidence to justify the initial pat down search of appellant pursuant to Terry. The question becomes whether the circumstances demonstrate probable cause. As stated previously, if the officer finds nothing from the pat down, theremust be probable cause to proceed further. Otherwise, the search must end.
 {¶ 17} The United States Supreme Court defines probable cause as "whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense."Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223. Probable cause to search the premise or location is not sufficient to search the person without more specific individualized probable cause. Id. Thus, a law enforcement officer must reasonably believe, or suspect, his protection or safety is endangered bythe individual before he or she may conduct a search of that individual. Id. at 93.
 {¶ 18} Here, the trial court's opinion notes appellant's argument that no probable cause existed under R.C. 2933.32 and uses the phrase intermittently. However, we find the opinion does not indicate the trial court differentiated between the standard of reasonable suspicion necessary for a pat down frisk and the higher standard of probable cause required for a strip search. The decision states:
* * * However, the court does agree with the argument that, assuming that a strip search did occur, it was justified by probable cause.
In support of the probable cause argument defendant relies on the case of State of Ohio v. Barnes * * *.
* * * This case differs from Barnes in that the issue here concerns an alleged strip search as opposed to a pat-down search. * * * Nevertheless, the Barnes case is instructive in several respects.
* * *
Here, again, a strip search is involved, which is a more invasive process than [sic] a pat-down search, thus, the authority to conduct such search should logically be even more narrowly drawn.
* * *
In this case, the search of plaintiff may be construed to have amounted to a strip search; however, even after very narrowly drawing Officer Tibbetts' authority to conduct such search, the court is convinced that specific and articulable facts existed which, along with the rational inferences from those facts, would have warranted a reasonably prudent peace officer in doing the same.
* * *
* * * For these reasons, this court concludes that probable cause existed for the search of plaintiff and that Officer Tibbetts' limited statutory authority to arrest parole violators included the right to conduct a search of plaintiff under the facts and circumstances of this case. * * *
(Trial Court Decision at 5-8.)
 {¶ 19} A review of the trial court's decision indicates that another person reading it could assume that if the officer has the authority to conduct a pat down, the officer necessarily has the authority to conduct a strip search. That is not legally correct. The record evidences sufficient reasonable suspicion to justify the pat down search, however, the trial court fails to articulate the specific facts to support its finding of probable cause. Therefore, we find it necessary to remand the case to the trial court for further clarification. Accordingly, appellant's first assignment of error is sustained.
 {¶ 20} In her second assignment of error, appellant contends the trial court erred by failing to award attorney's fees to her after she was subjected to an unlawful strip search.
 {¶ 21} Pursuant to R.C. 2933.32(D)(2), an individual is entitled to reasonable attorney fees in an action where a law enforcement officer conducted an illegal strip search. This fee shifting provision in the statute is activated when the searched party prevails at trial. The trial court already found appellant was subjected to a strip search; we agree. On remand, if the trial court determines the strip search was illegal, e.g., no probable cause existed, the court may award attorney's fees pursuant to R.C. 2933.32(D)(2).
 {¶ 22} Accordingly, appellant's second assignment of error is sustained, and the matter is remanded to the trial court for a determination of the issues consistent with this opinion.
 {¶ 23} Finally, we turn to DRC's cross-assignment of error. DRC argues a strip search was not conducted as defined by R.C.2933.32(A)(2). Conversely, DRC argues because Officer Tibbetts did not specifically ask appellant to expose herself there could be no strip search as defined by 2933.32(A)(2).
 {¶ 24} R.C. 2933.32(A)(2) defines a strip search as an "* * * inspection of the genitalia, buttocks, breast, orundergarments, of a person * * * preceded by the removal orrearrangement of some or all of the person's clothing that directly covers the person's genitalia, buttocks, breasts, orundergarments * * * conducted visually, manually * * * in any other manner * * *." R.C. 2933.32(A)(2) (Emphasis added.)
 {¶ 25} DRC argues even if Officer Tibbetts did see appellant's breasts, she did not "inspect" them as defined in R.C. 2933.32(A)(2). DRC, citing The American Heritage College Dictionary, 3rd Ed. (1993), at 704, defines inspect as "The act of inspecting; official examination or review. To examine carefully and critically or to review or examine officially." (Appellee's Brief, at 11.)
 {¶ 26} When construing statutes, the United States Supreme Court has held the court must begin its analysis by examining the language of the statute. If the meaning is ambiguous, the court must determine how to apply the statute, particularly when the statute uses a word with various definitions. Ardestani v. INS
(1991), 502 U.S. 129, 135, 112 S.Ct. 515 (determining the proper application of the word "under," as used in a statute). There are various definitions of the word inspect. Therefore, we must determine the appropriate usage applicable to the current case as defined in prior case law. See Terry, supra, at 19 (defining search as an unlimited examination of person for any and all seizable items); Justice v. City of Peachtree City (C.A. 11, 1992), 961 F.2d 188, 191 (search as an intrusion where a person has a reasonable expectation of privacy); Stanley v. Henson
(C.A. 7, 2003), 337 F.3d 961, 964 (finding a strip search was conducted where the security officer did not actually view defendant change); Johnson v. Phelan (C.A. 7, 1995),69 F.3d 144, 145 (observation is a form of search); Greendale BaptistChurch and Academy v. Heck (C.A. 7, 2003) 327 F.3d 492, 510
(defining search as meant to look over or through with the purpose of finding something). We find that inspection includes" to view," and falls within the purview of R.C. 2933.32(A)(2).
 {¶ 27} DRC further contends that because Officer Tibbetts did not specifically ask appellant to expose her breasts, and Officer Tibbetts did not physically remove her bra, a strip search did not occur. However, this argument conflicts with the plain language of R.C. 2933.32(A). DRC first errs by focusing on the fact Officer Tibbetts did not ask to see the appellant's breasts. Officer Tibbetts did require appellant to lift her shirt, exposing her bra. This falls under the definition of undergarment as used in R.C. 2933.32(A)(2). Further, R.C. 2933.32(A)(2) states that a strip search may be conducted visually, and its requirements are triggered without an officer manually conducting the strip search. Accordingly, we agree with the trial court that a strip search took place under the facts of this case. The state's cross-assignment of error is overruled.
 {¶ 28} Based on the above, we find the trial court did not specifically apply the standard of probable cause to determine whether the strip search of appellant was legal. Although the opinion uses the phrase "probable cause" intermittently, it does not sufficiently discuss the difference between probable cause and reasonable suspicion so that we may affirmatively conclude it applied the correct standard. Therefore, we must remand to the trial court for further clarification.
 {¶ 29} Accordingly, appellant's first and second assignments of error are sustained, DRC's cross-assignment of error is overruled, and the judgment of the Court of Claims of Ohio is reversed and remanded to that court for further proceedings in accordance with law consistent with this opinion.
Judgment reversed and remanded.
Bryant and Petree, JJ., concur.
[1] The three factors listed in 2933.32(B)(2) are inapplicable in the present case because the appellant was strip searched as a third party to an arrest. She was not charged with an offense, the officers did not know of any prior record, and she was not placed under arrest before the strip search.