{¶ 1} Plaintiff-appellant, Beatrice Washington, appeals from a judgment of the Ohio Court of Claims in favor of defendant-appellee, Ohio Department of Rehabilitation and Correction ("ODRC").
 {¶ 2} This matter is before this court for the second time, and the facts and procedural history as set forth in our prior decision, Washington v. Ohio Dept. of Rehab. Corr., Franklin App. No. 03AP-912, 2004-Ohio-4651,2004 WL 1945675 ("Washington I") will be reiterated only to the extent necessary to address the issues raised in the present appeal. The case arises out of an allegedly unlawful strip search of appellant by an officer of the Ohio Adult Parole Authority ("OAPA") in the course of an arrest of appellant's husband, Robert Washington, for a parole violation. Appellant filed a complaint in the Court of Claims alleging a violation of Ohio's statute governing strip searches, R.C. 2933.32, and a common-law claim for invasion of privacy. After a bench trial in the Court of Claims, the court rendered a decision and judgment finding that although the evidence supported that a strip search had taken place, the search was permissible under the relevant statutory subsection, R.C. 2933.32(B)(2), and that the elements of the common-law claim for invasion of privacy were not met. *Page 799 
 {¶ 3} Appellant then filed her initial appeal to this court, asserting that the trial court had incorrectly applied a reasonable-suspicion standard rather than the probable-cause standard required by R.C. 2933.32(B) for strip searching. ODRC cross-appealed from the trial court's determination that a strip search had in fact occurred.
 {¶ 4} In Washington I, we overruled ODRC's assignment of error and affirmed the trial court's finding that the evidence supported that a strip search of appellant had in fact occurred. We sustained appellant's assignment of error, finding that the trial court had applied the incorrect standard of determination of whether the strip search was lawful, and remanded the cause to the trial court with instructions to apply the correct probable-cause standard.
 {¶ 5} Upon remand, the Court of Claims again considered the evidence it had heard at trial, this time applying the probable-cause standard set forth in Bell v.Wolfish (1979), 441 U.S. 520, 559, 99 S.Ct. 1861,60 L.Ed.2d 447. Based on the officers' concern over whether appellant was concealing a weapon, the trial court found that it was reasonable for the officers, after subjecting appellant to a clothed pat-down search, to continue with a strip search for a concealed weapon. The Court of Claims accordingly again found in favor of ODRC in the case.
 {¶ 6} Appellant has once again appealed and brings the following assignments of error:
 First Assignment of Error
 The trial court erred by finding that the APA was not liable for the strip search of Washington.
 Second Assignment of Error
 The trial court erred by failing to award attorney's fees to Washington.
 {¶ 7} We will note ab initio that the trial court's disposition of appellant's common-law claim for invasion of privacy was not appealed in Washington I, and that that claim is no longer in the case. Likewise, the trial court's determination that a strip search of appellant actually occurred was affirmed by this court, and that factual determination has become the law of the case. As the case now stands, therefore, the question is whether the trial court's determination that probable cause existed for a strip search under R.C.2933.32(B)(2) is supported by the manifest weight of the evidence.
 {¶ 8} When reviewing a trial court's decision on a manifest-weight-of-the-evidence basis, we are guided by the presumption that the factual findings of the trial court were correct. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. The rationale for this presumption is that the trial court is in the best *Page 800 
position to evaluate the evidence by viewing witnesses and observing their demeanor, voice inflections, and gestures.Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. Likewise, documentary evidence is best viewed in the context of the entire scope of evidence heard at trial, and the trier of fact is in the best position to assess the global weight of all evidence heard. Thus, judgments supported by some competent, credible evidence going to all the essential elements will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.
 {¶ 9} The testimony heard by the trial court established the following. On November 1, 2000, OAPA Officer Jennifer Tibbetts, in company with two other OAPA officers and two Middletown police officers, arrived at the home appellant shared with her husband to arrest Mr. Washington for a parole violation. A sweep of the home revealed drug paraphernalia, crack cocaine, a night stick, two knives, handgun ammunition, and pornographic tapes and photographs. Officer Tibbetts testified that during the initial entry into the house and subsequent arrest and search, appellant sat calmly in the living room, made no furtive movements, and exhibited no other suspicious behavior. Based upon discovery of the weapons, particularly the handgun ammunition without a corresponding firearm, Officer Tibbetts, as the only female officer present, led appellant to a bathroom in order to secure a secluded location for a pat-down search for weapons. After patting appellant down, Officer Tibbetts requested that appellant lift her shirt and "shake out" her bra. No weapons or drugs of any kind were found either during the pat-down or subsequent strip search. Although appellant was subsequently arrested on an outstanding warrant for passing a bad check, Officer Tibbetts testified that at the time of the pat-down and strip search, appellant was not in custody nor charged with any offense. The Middletown police officers present took the crack cocaine and paraphernalia found in the house, but appellant was never charged with any crime arising out of the items. Officer Tibbetts emphasized in her testimony that the pat-down and strip search were both undertaken in furtherance of the security of the officers present, out of concern that appellant might be harboring a weapon on her person, particularly a handgun associated with the previously found ammunition.
 {¶ 10} R.C. 2933.32 defines the circumstances under which authorized persons may conduct a cavity search or strip search in Ohio, providing as follows:
 (B)(1) Except as authorized by this division, no law enforcement officer, other employee of a law enforcement agency, physician, or registered nurse or licensed practical nurse shall conduct or cause to be conducted a body cavity search or a strip search. *Page 801 
 (2) A body cavity search or strip search may be conducted if a law enforcement officer or employee of a law enforcement agency has probable cause to believe that the person is concealing evidence of the commission of a criminal offense, including fruits or tools of a crime, contraband, or a deadly weapon, as defined in section 2923.11 of the Revised Code, that could not otherwise be discovered. In determining probable cause for purposes of this section, a law enforcement officer or employee of a law enforcement agency shall consider the nature of the offense with which the person to be searched is charged, the circumstances of the person's arrest, and, if known, the prior conviction record of the person.
 (3) A body cavity search or strip search may be conducted for any legitimate medical or hygienic reason.
 (4) Unless there is a legitimate medical reason or medical emergency justifying a warrantless search, a body cavity search shall be conducted only after a search warrant is issued that authorizes the search. In any case, a body cavity search shall be conducted under sanitary conditions and only by a physician, or a registered nurse or licensed practical nurse, who is registered or licensed to practice in this state.
 (5) Unless there is a legitimate medical reason or medical emergency that makes obtaining written authorization impracticable, a body cavity search or strip search shall be conducted only after a law enforcement officer or employee of a law enforcement agency obtains a written authorization for the search from the person in command of the law enforcement agency, or from a person specifically designated by the person in command to give a written authorization for either type of search.
 * * *
 [D](3) If a person is subjected to a body cavity search or strip search in violation of this section, any person may commence a civil action to recover compensatory damages for any injury, death, or loss to person or property or any indignity arising from the violation. In the civil action, the court may award punitive damages to the plaintiffs if they prevail in the action, and it may award reasonable attorney's fees to the parties who prevail in the action.
 {¶ 11} This provision could be interpreted, viewing the language of R.C. 2933.32(B)(2), as allowing a warrantless search (in the absence of a medical emergency) only when (1) the person to be searched is or will be charged with a crime and (2) probable cause exists for the search. Our prior decision, however, held that the statute authorizes third-party strip searches in conjunction with the arrest of a parolee.Washington I, at ¶ 4. That holding was based on an expansion of State v. Barnes (Sept. 6, 1996), Montgomery App. No. 15149, 1996 WL 501464, which authorized third-party pat-downs by OAPA officers seeking to *Page 802 
secure and detain a parolee. That determination has become the law of the present case.
 {¶ 12} Pursuant to our prior decision inWashington I, therefore, the standard to be met in the present case upon remand was as follows: Officer Tibbetts, pursuant to Terry v. Ohio (1968), 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889, could conduct a protective frisk for weapons if she harbored a reasonable suspicion that her safety and the safety of the other officers present was in danger.Terry, however, authorizes only a "carefully limited search of the outer clothing of such persons in an attempt to discover weapons." Id. at 30, 88 S.Ct. 1868. An officer conducting such a search must "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21,88 S.Ct. 1868. The officer, finding nothing in the protective frisk, may proceed to a more intrusive search only upon making a probable-cause determination. Id. at 30, 88 S.Ct. 1868.
 {¶ 13} In the present case, it is undisputed that the presence of ammunition without corresponding weapons justified a protective pat-down of bystanders in the house. No evidence was presented, however, that after
the protective pat-down of appellant by Officer Tibbetts, probable cause existed to conduct a strip search of appellant in further search of weapons. While ODRC and the Court of Claims relied on Barnes for the proposition that a further search of weapons was justified by the initial reasonable suspicion, as we noted in Washington I, "probable cause for a more intrusive search was not at issue in [Barnes]."Washington I, at ¶ 14. Officer Tibbetts did not testify, nor was any other evidence introduced, that there existed individualized probable cause for the search, that is, that the officers' protection or safety was endangered by the individual by a subsisting belief that the individual might still harbor weapons after the pat-down. Beck v. Ohio
(1964), 379 U.S. 89, 93, 85 S.Ct. 223, 13 L.Ed.2d 142.
 {¶ 14} We accordingly find that the Court of Claims erred in finding, against the manifest weight of the evidence, that probable cause existed for a strip search allowed under R.C. 2933.32(B). Appellant's first assignment of error has merit and is sustained. Appellant's second assignment of error is prematurely before this court, because the trial court's refusal to award fees was based on the verdict in favor of ODRC. The judgment of the Ohio Court of Claims is reversed, and the matter is remanded to the Court of Claims to enter judgment on liability in favor of appellant and for further proceedings to determine the amount of damages and attorney fees.
 Judgment reversed and cause remanded. *Page 803 
KLATT, P.J., concurs.
FRENCH, J., concurs separately.
DESHLER, J., retired, of the Tenth Appellate District, sitting by assignment.