[Cite as *Walker v. Wright*, 2015-Ohio-248.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Frank D. Walker, Jr.,                          :

       Plaintiff-Appellee,               :

                                   No. 13AP-1003

v.                                             :          (M.C. No. 2012 CVF 013295)

Larry L. Wright,                               :          (REGULAR CALENDAR)

       Defendant-Appellant.              :

---

D E C I S I O N

Rendered on January 27, 2015

---

*Frederick D. Benton, Jr., A Legal Professional Association*, and *Frederick D. Benton, Jr.*, for appellee.

*Byron L. Potts & Co., LPA*, and *Byron L. Potts*, for appellant.

---

APPEAL from the Franklin County Municipal Court.

BROWN, J.

{¶1} Defendant-appellant, Larry L. Wright, appeals the judgment of the Franklin County Municipal Court in favor of plaintiff-appellee, Frank D. Walker, Jr. Because the trial court properly granted judgment for appellee, we affirm.

{¶2} In May 2010, the parties entered into a business venture involving publication of a weekly newspaper profiling individuals arrested for committing crimes in central Ohio. The exact nature of the parties' involvement in the enterprise is disputed; however, appellee generally handled financial matters while appellant was responsible for publication and distribution of the newspaper. The parties published the first newspaper in May 2010; their business relationship ended in August 2010.

{¶3} On April 17, 2012, appellee filed a complaint asserting claims for breach of contract, promissory estoppel, and unjust enrichment. The complaint alleged that appellant owed appellee $5,759.78 for appellee's monetary contributions to the business. On May 9, 2012, appellant filed an answer and counterclaim alleging breach of fiduciary duty, embezzlement, and misappropriation. Appellant asserted appellee failed to maintain a proper accounting of the business income and expenses, used business income for personal expenditures, and did not share business profits. Appellant sought damages of $15,000. Appellee filed a response to appellant's counterclaim on May 23, 2012.

{¶4} Following unsuccessful mediation efforts, the matter proceeded to a bench trial in September 2013. On October 31, 2013, the trial court issued a judgment entry awarding appellee $2,451 in damages.

{¶5} In a timely appeal, appellant asserts the following assignments of error:

> [I]. THE TRIAL COURT'S JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE IT BASED ITS JUDGMENT ON BUSTED'S BUSINESS ACCOUNT WITHDRAWALS AND DEPOSITS, AND AN ACCOUNTING OF SUCH TRANSACTIONS SHOWS THAT PLAINTIFF-APPELLEE CONVERTED BUSINESS PROFITS TO HIS PERSONAL USE AFTER THE PARTNERSHIP WAS TERMINATED.
>
> [II]. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT RENDERED AN ARBITRARY JUDGMENT THAT WAS INCONSISTENT WITH THE TESTIMONY OF PLAINTIFF-APPELLEE AND ALL THE OTHER WITNESSES, AND AWARDED PLAINTIFF-APPELLEE DAMAGES FOR WITHHELD PROFITS.
>
> [III]. THE TRIAL COURT ERRED AS A MATTER OF LAW BECAUSE IT AWARDED A JUDGMENT IN APPELLEE'S FAVOR WITHOUT SUFFICIENT PROOF TO DETERMINE A FINAL ACCOUNTING OF THE PARTNERSHIP'S AFFAIRS.

{¶6} During his case-in-chief, appellee presented the testimony of appellant, as if on cross-examination. Appellant testified that beginning in 2007, he owned and operated an entity known as Busted Files. Busted Files published and distributed a weekly newspaper which profiled individuals arrested for committing crimes in central Ohio. In

April 2010, appellee approached appellant about creating a joint venture for the purpose of publishing and distributing a weekly statewide newspaper profiling criminal defendants. In May 2010, the parties entered into an oral partnership in that regard; they did not execute a written partnership agreement. Pursuant to the oral agreement, Busted Files was to create and distribute the publication under the umbrella of Busted News Group. The publication was to be distributed under the name Busted.

{¶7} According to appellant, he and several drivers he hired distributed the newspapers to a number of vendors who then sold the newspapers at their establishments. Appellant and the other drivers would later collect from the vendors the money received from the sales of the newspapers. The vendors paid either in cash, check or money order, and were provided receipts showing the amount turned over to appellant or the drivers. The drivers were compensated both for their services as well as expenses related to fuel or food, and were paid either in cash or by check. On rare occasions, appellee was involved in the delivery/collection process.

{¶8} Appellant averred appellee opened an account with U.S. Bank in the name of Busted News Group for purposes of depositing monies from sales of the newspaper and paying expenses associated with the publication. Even though appellant and appellee were joint partners, appellee was the only signatory on the account. According to appellant, he and the drivers turned over to appellee all monies collected from the vendors for deposit into the U.S. Bank account. Appellant conceded, however, he had no written documentation substantiating this contention.

{¶9} Appellant testified he and appellee were jointly responsible for placing weekly printing orders as well as ordering and purchasing supplies on behalf of Busted News Group. He terminated his business relationship with appellee in mid-August 2010 because appellee never paid him his share of the profits. Although he was certain Busted News Group was profitable during its four-month existence, he did not know if the entity ever incurred any expenses. Appellant estimated his share of the profits in Busted News Group to be approximately $15,000.

{¶10} Appellee, testifying on his own behalf, presented a markedly different account of the parties' business relationship. According to appellee, in April 2010, appellant disclosed he was having financial difficulties publishing his Busted Files

newspaper.  Appellant initially asked appellee to loan him money to continue the Busted Files publication; however, the two ultimately entered into a verbal agreement in May 2010 to create a new entity known as Busted News Group to publish a weekly newspaper to be known as Busted.  Pursuant to their verbal agreement, appellee was to provide the start-up capital, handle all financial aspects of the business, and recover his capital contribution from sales of the newspaper. Appellee described his business relationship with appellant and Busted News Group as that of lender, not partner or investor.

{¶11}  In his role as financial manager, appellee opened a bank account with U.S. Bank in the name of Busted News Group.  Pursuant to the parties' verbal agreement, all revenue generated from newspaper sales was to be given to appellee for deposit into the U.S. Bank account, and all publication expenses were to be paid out of the funds deposited into that account.  Appellee's daughter was the sole signatory on the account. Appellee informed appellant the account had been opened and invited him to add himself as a signatory; appellant declined. According to appellee, appellant never objected to appellee's daughter being the sole signatory on the account, never asked to see a bank statement, never inquired about the management of the account, and never asked for an accounting of the revenue, expenses, and profits associated with Busted News Group.

{¶12} Appellee testified the parties' verbal agreement contemplated appellant would handle all aspects of the publication and distribution process.  Although appellant indicated to appellee he had the knowledge and ability to perform the tasks associated with this process, appellee soon realized appellant had to contract with other individuals and companies to provide many of the necessary services.  Appellee paid these initial expenses out of his personal finances.  In addition, even after newspaper sales increased and some revenue was generated, publication expenses often exceeded revenue, and appellee continued to pay various expenses out of his own pocket.  The continuous revenue shortage aroused appellee's suspicions that appellant was not turning over some of the revenue generated from newspaper sales. According to appellee, appellant neither contributed personal funds to the enterprise nor offered to reimburse appellee for his personal contributions.

{¶13} Appellee averred his business relationship with appellant ended on August 13, 2010 due to a breakdown in communication.  Appellee's repeated efforts to

recover the funds he loaned appellant were unsuccessful. Following demise of the business relationship on August 13, 2010, appellee kept the U.S. Bank account open for his personal use.

{¶14} Appellant presented several witnesses on his behalf, including Rory Reid, a representative of U.S. Bank. Reid identified defendant's exhibit No. 55 as certified photocopies of cash, check, and money order deposits made to the Busted News Group account between May and August 2010.

{¶15} Two of the drivers who distributed newspapers for Busted News Group, Anthony Bosley, Sr., and James Brown, also testified on appellant's behalf. Both averred they provided receipts to the vendors from whom they collected and provided copies of the receipts, along with the funds collected from the vendors, directly to appellee. Both attested they did not give appellant any of the funds collected from the vendors. Both drivers conceded they did not have any written documentation substantiating their testimony that they turned vendor money over to appellee.

{¶16} During his direct examination, appellant essentially reiterated the testimony he provided on cross-examination in appellee's case-in-chief, with some additions. Appellant vehemently denied appellee's contention that his role in the business venture was that of lender and not partner. According to appellant, appellee's initial investment in the enterprise was less than $700—the cost of the first printing of the Busted newspaper—and that appellee was to be repaid this investment out of the gross proceeds from sales of the newspaper. Thereafter, appellant and appellee were to split any of the profits (derived from gross receipts, minus expenses) from sales of the newspaper. Appellant averred that appellee never told him he was opening an account at U.S. Bank; moreover, appellee never asked appellant to be a signatory on the account, and never reported that appellee's daughter was the sole signatory on the account. Appellant testified he repeatedly asked appellee for a financial accounting regarding gross receipts, expenses, and profits pertaining to the business; however, he was "brushed off" and told the business was not making any money. (Tr. 308.) Appellant stated he turned over all monies he collected from vendors and advertisers to appellee and ended his business relationship with appellee because he never received any of the profits from the business.

He conceded he did not turn in approximately $1,000 in vendor receipts collected by him and other drivers in August 2010.

{¶17}   At the close of all the evidence, appellee revised his claim to $3,902 based on the withdrawal of certain exhibits pertaining to personal expenditures he made on behalf of Busted News Group using the tax-exempt identification number of a Columbus area church.

{¶18}  In its October 31, 2013 judgment entry, the trial court noted the parties' poor recordkeeping regarding the newspaper sales and associated expenses; accordingly, the court determined the only method to track business revenue and expenses was through the U.S. Bank account and the testimony of the witnesses.   To that end, the court noted the conflicting testimony provided by appellant and appellee as to whether appellee deposited all revenue into the bank account or kept some of the revenue for his personal use.  The court found appellee's testimony to be corroborated by the bank statements and that no testimony or evidence indicated appellee kept any of the revenue for himself or did not deposit all revenue generated by the business into the bank account.   The court also noted appellant's concession that in August 2010 he failed to turn in $1,000 in vendor receipts for deposit into the business bank account.   The court ultimately concluded:

> The court finds for the plaintiff by a preponderance of the evidence.  The court finds that this was a joint venture and that as such both parties are responsible for the bills incurred by the business.  The court awards the plaintiff $2,451.00. The court reached this number by taking half of the amount prayed for by the plaintiff and adding half of the profits the defendant admits he withheld from the plaintiff.
>
> As there was no evidence to support the counterclaim of the defendant the court finds for the plaintiff with regard to defendant's counterclaim.

(Oct. 31, 2013 Judgment Entry, 2.)

{¶19}  We address appellant's first and second assignments of error together, as they are related.   In these assignments of error, appellant contends the trial court's judgment was against the manifest weight of the evidence.   "Judgments supported by

some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279 (1978), syllabus. "The phrase 'some competent, credible evidence' in *C.E. Morris* presupposes evidentiary weighing by an appellate court to determine whether the evidence is competent and credible." (Emphasis omitted.) *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 15. "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.' " (Emphasis omitted.) *Id.* at ¶ 12, quoting *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997). Thus, in reviewing a judgment under the manifest weight standard, a court of appeals " ' "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." ' " *Eastley* at ¶ 20, quoting *Tewarson v. Simon,* 141 Ohio App.3d 103, 115 (9th Dist.2001), quoting *Thompkins* at 387.

{¶20} In undertaking this limited reweighing of the evidence, however, we are guided by the presumption that the factual findings of the trial court were correct. An appellate court "must always be mindful of the presumption in favor of the finder of fact." *Eastley* at ¶ 21. Accordingly, the weight to be given the evidence and the credibility of the witnesses are primarily questions to be answered by the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not. The determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal." *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 81 (1984). The trial court is in the best position to evaluate the evidence by viewing witnesses and observing their demeanor, voice inflections, and gestures. *Id.* at 80. Likewise, documentary evidence is best viewed in the context of the entire range of evidence heard at trial, and the trier of fact is better placed to assess the persuasive weight of documents and exhibits when considered jointly with the credibility of relevant witness testimony. *Washington v. Ohio Dept. of Rehab. & Corr.,* 166 Ohio App.3d 797, 800, 2006-Ohio-2435 (10th Dist.).

{¶21} "A reversal of a jury verdict on the ground that it is against the manifest weight of the evidence must be made with the concurrence of all three judges of the appellate panel." *Chefor v. Morgan,* 10th Dist. No. 13AP-100, 2013-Ohio-4213, ¶ 13, citing Ohio Constitution, Article IV, Section 3(B)(3).  In contrast, when an appellate court reviews a civil verdict in a case tried to the bench, such as in the present case, reversal on manifest weight grounds may be by a simple majority.  *Id.,* citing App.R. 12(C).

{¶22} Appellant contends the trial court erred in construing the parties' documentary evidence and related testimony to establish that appellant owed appellee $2,451 resulting from the parties' business venture. Appellant maintains the documentary and testimonial evidence established the business was profitable and that appellee never shared the profits to which appellant was entitled.

{¶23} Appellant first argues the deposits and withdrawals from the U.S. Bank account established that appellee withheld $1,126.88 from him upon termination of the parties' business relationship.  Appellant's contention derives from simply subtracting the total amount withdrawn from the U.S. Bank account ($9,703.62) from the total amount deposited into the U.S. Bank account ($10,830.50) from May through mid-August 2010. However, appellant's argument does not take into account appellee's testimony that he paid many of the expenses incurred by Busted News Group from his own personal funds. Appellant argues that the trial court erred in crediting appellee's testimony in this regard because he did not provide documentary proof to support his claim.  However, the trial court, as the trier of fact, was free to believe appellee's testimony regardless of whether he submitted supporting documentary evidence.

{¶24} Next, citing his own testimony that he was not a signatory on the U.S. Bank account and appellee's admission that he kept the account open for his personal use after the demise of the parties' business relationship in mid-August 2010, appellant summarily concludes that appellee converted business funds to his personal use.  However, appellant's argument ignores appellee's testimony that appellant repeatedly declined appellee's invitation to be added as a signatory on the account.  Further, the documentary evidence submitted pertaining to the U.S. Bank account, along with appellee's related testimony, established that appellee utilized the account for his personal use only after termination of the parties' business relationship.  Contrary to appellant's suggestion, such

evidence does not prove that appellee converted business funds for his personal use during the time the parties were in business together.

{¶25} In further support of his contention that the business venture was profitable and that appellee did not share these profits with him, appellant cites to his own exhibit (exhibit No. 38), which purportedly established that, from May through mid-August 2010, appellant and the individual drivers presented to appellee for deposit into the U.S. Bank account 482 vendor receipts totaling $5,212.70 in gross sales. Appellant contends the trial court should have considered these receipts when determining whether the business venture was profitable. Review of the receipts reveal that they include only the date, account location, number of newspapers distributed, cost per copy sold, number of unsold newspapers returned, and driver's name. They do not establish that the distributors of the newspaper (either appellant or the other drivers) actually collected any money from the vendors or gave the money allegedly collected from the vendors to appellee for deposit into the U.S. Bank account. Although appellant and the two drivers who testified on his behalf stated that they turned all monies collected from the vendors over to appellee for deposit into the bank account, the trial court was free to believe all, part or none of this testimony, and, as noted above, the actual vendor receipts did not support this testimony. Moreover, even if the $5,212.70 was deposited into the account, such fact does not necessarily establish that the business was profitable. Appellant's argument does not account for the fact that the business incurred significant operating expenses.

{¶26} Appellant also contends the trial court erred in finding appellee's testimony to be credible. In support of his contention, appellant first notes appellee's cross-examination testimony during which he was confronted with documentary evidence which seemingly contradicted his direct testimony that he personally paid for certain Busted News Group expenses. Appellant contends that appellee's admission that he could not determine whether he actually used personal funds for these particular transactions essentially rendered appellee's testimony incredible as to all of the claimed personal expenditures. As noted above, witness credibility is within the province of the finder of fact, and this court may not substitute its judgment for that of the trial court. *DeHass; Seasons Coal.* Moreover, the fact that the trial court awarded appellee only one-half of his

claimed damages suggests that it may have accounted for the inconsistencies in appellee's testimony.

{¶27} Appellant next challenges appellee's credibility based on his admitted misuse of a tax-exempt identification number related to some of his claimed personal expenditures. Prior to the commencement of testimony, appellee proposed he would withdraw certain exhibits detailing nearly $1,200 in personal expenditures purportedly made for Busted News Group which were purchased using either the name or tax-exempt identification number of a Columbus area church. Appellee proposed the withdrawal in exchange for appellant's assurance that he would not raise any questions or arguments related to those particular expenditures. Appellant did not agree to the proposal, arguing that such evidence was relevant and exposed appellee's lack of credibility. The trial court overruled appellee's proposed withdrawal, stating it would decide what weight and credibility to afford the evidence and related testimony.

{¶28} Later, during appellee's cross-examination, appellant questioned appellee about these expenditures. Appellee objected on relevancy grounds and indicated he would assert his Fifth Amendment privilege against self-incrimination. Appellee further asserted he would withdraw the documentation and corresponding claims for damages. The trial court averred, "I'm going to allow that to happen. I understand what you're using it for. I think your point's made. There's no question about it that it goes to credibility." (Tr. 218.) Later, during discussion related to the admission of the parties' exhibits, appellant conceded that appellee withdrew the documentation and corresponding claims for damages related to the expenditures made using the tax-exempt identification number.

{¶29} Appellant contends the trial court mischaracterized what transpired at trial by stating in its judgment entry, "[p]rior to the start of the trial plaintiff amended their complaint amount to $3,902.00." (Oct. 31, 2013 Judgment Entry, 1.) Appellant maintains the court's averment established that it failed to consider appellee's credibility and disregarded its ruling that it would not permit appellee to withdraw the documentation and corresponding claims for damages related to the expenditures made using the tax-exempt identification number. However, appellant's argument completely disregards the court's statements made during appellee's cross-examination that it would

consider appellee's credibility and would allow appellee to withdraw the offending documentation and claims for damages, as well as his own concession that appellee had withdrawn such claims.

{¶30} Appellant next challenges the trial court's averment in its judgment entry that "[t]he court finds that this was a joint venture and that as such both parties are responsible for the bills incurred by the business." (Oct. 31, 2013 Judgment Entry, 2.) Appellant maintains the parties never contemplated that he would have to reimburse appellee for any personal contributions appellee made to Busted News Group. Appellant argues "[t]he testimony of both parties shows that they only contemplated Appellee receiving reimbursement [for] his personal expenditures, if and when Busted [News Group] began producing a profit." (Appellant's brief, 35.)

{¶31} Appellant's assertion manifestly mischaracterizes appellee's testimony on this issue. During cross-examination, appellant questioned appellee about how he was to be repaid for the personal expenditures he made on behalf of Busted News Group. Appellee averred, "[t]he condition that was supposed to be met, per our discussion, was, I would loan him the money and put the money [into] the newspaper with the hopes in the future that this business would be successful and I would be returned my money that I put in, that I loaned him." (Tr. 177.) When asked how the parties would determine when the business was successful, appellee replied, "[t]here wasn't a determination at that point. We had a gentleman's agreement that I would be paid my money back." (Tr. 177.) Following appellant's question about appellee's "understanding of success," the trial court averred that appellant had misconstrued appellee's testimony to mean that he agreed to be reimbursed for his expenditures only upon the business being successful. The court then engaged in the following colloquy with appellee:

> THE COURT: Hang on.
>
> Mr. Walker, was it your understanding that any money that you put into this venture, that you would recoup - - the only time you were ever going to get paid back any money was if the business was successful or - - how about we just term it this way - - made a profit?
>
> THE WITNESS: Yes

THE COURT:  That was your understanding?

THE WITNESS:  Yes.

THE COURT:  So your understanding was if you put $5,000 into a business and the business never made a dime that you weren't going to recoup your $5,000?

THE WITNESS:  I would expect to recoup my $5,000.

(Tr. 179.)

{¶32}  Although appellant testified he never agreed to reimburse appellee for any personal expenditures appellee made on behalf of Busted News Group unless the business was profitable, appellee's testimony supports the trial court's conclusion that the parties were jointly responsible for the expenses incurred by Busted News Group regardless of its profitability. As previously noted, the determination of witness credibility is within the province of the trial court.

{¶33}  Appellant next contends the trial court erred in awarding appellee one-half of the $1,000 in vendor receipts appellant conceded he did not turn over to appellee in August 2010.  Appellant contends the trial court erred in finding the $1,000 to constitute "profits" to which appellee was entitled, as appellee failed to present evidence as to the expenses associated with printing the newspapers that generated the $1,000 in vendor receipts, and appellant did not expressly testify that the $1,000 represented profits.

{¶34}  Assuming, without deciding, that the trial court mischaracterized the $1,000 in vendor receipts as "profits," the trial court awarded appellee only $500 of the $1,000 appellant admittedly did not turn over to appellee.  The court did so after determining that the parties engaged in a joint venture and accordingly were jointly responsible for any expenses incurred by the business.

{¶35}  Appellant lastly contends the trial court erred in failing to offset appellee's damage award by the capital appellant brought into the business through existing advertising accounts.  Specifically, appellant argues the damage award should have been offset by $750, evidenced by two deposits to the U.S. Bank account from advertisers previously associated with appellant's previous publication, Busted Files.

{¶36}　We note initially that appellant has not directed us to any place in the record demonstrating that he raised this issue before the trial court.　" 'A party who fails to raise an argument in the court below waives his or her right to raise it' on appeal." *Citibank N.A. v. Fornal,* 10th Dist. No. 11AP-300, 2014-Ohio-3301, ¶ 6, quoting *State ex rel. Zollner v. Indus. Comm.,* 66 Ohio St.3d 276, 278 (1993). Moreover, even had appellant raised the issue below, appellant's own testimony established that he did not make a monetary investment in Busted News Group, and he offered no evidence establishing a monetary value for either his experience and expertise or the transfer of the advertising accounts from Busted Files to Busted News Group.　Accordingly, the trial court had no evidence on which it could have based an offset of appellee's damage award.

{¶37}　For the foregoing reasons, we conclude the trial court's judgment was not against the manifest weight of the evidence.　Accordingly, we overrule appellant's first and second assignments of error.

{¶38}　In his third assignment of error, appellant contends the trial court erred as a matter of law in awarding judgment for appellee without sufficient proof to determine a final accounting of the partnership affairs.

{¶39}　Appellant argues that since the trial court expressly identified the parties' business relationship as a "joint venture" and determined they were both responsible for expenses incurred by the business, the laws of general partnership should apply. Accordingly, argues appellant, he was entitled to inspection of the partnership books pursuant to R.C. 1775.18 and to a formal account of the partnership affairs pursuant to R.C. 1775.21.　Assuming, arguendo, that the parties' business relationship constituted a partnership, appellant's citations to R.C. 1775.18 and 1775.21 are improper, as those provisions were repealed by 2008 H.B. No. 332, Section 3, effective January 1, 2010.[1]　As the parties' partnership was formed in May 2010, the provisions contained in R.C. Chapter 1776　would apply to this case.　However, appellant has neither cited nor asserted any arguments pertaining to any of the provisions contained in R.C. Chapter 1776.　"It is

---

[1] Ohio enacted the Uniform Partnership Act (1997) (R.C. 1776.01 to 1776.96), effective August 6, 2008 and repealed the Uniform Partnership Act (1914) (R.C. 1775.01 to 1775.65), effective January 1, 2010, pursuant to 2008 H.B. No. 332.　R.C. 1775.66(B), enacted as part of 2008 H.B. No. 332, provides that "[t]his chapter does not govern any partnership that is formed on or after the first day of January, 2009.　Chapter 1776. of the Revised Code governs any partnership formed on or after that date."

not the duty of a reviewing court to develop an argument in support of an assignment of error." *Allen v. Allen,* 10th Dist. No. 04AP-1341, 2005-Ohio-5993, ¶ 27, citing *Cardone v. Cardone,* 9th Dist. No. 18349 (May 6, 1998). "An appellate court need not guess at undeveloped claims on appeal." *Id.* at ¶ 27, citing *McPherson v. Goodyear Tire & Rubber Co.,* 9th Dist. No. 21499, 2003-Ohio-7190, ¶ 31.

{¶40} For the foregoing reasons, the third assignment of error is overruled.

{¶41} Appellee has filed a motion to strike various documents included in the appendices to appellant's brief, as well as any reference to those documents, on grounds that they were not part of the trial court record.

{¶42} "Appellate review is limited to the record as it existed at the time that the trial court rendered its judgment." *Aronhalt v. Castle,* 10th Dist. No. 12AP-196, 2012-Ohio-5666, ¶ 13, citing *Wiltz v. Clark Schaefer Hackett & Co.,* 10th Dist. No. 11AP-64, 2011-Ohio-5616, ¶ 13. " ' "A reviewing court cannot add matter to the record before it, which was not part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." ' " *Id.,* quoting *Morgan v. Eads,* 104 Ohio St.3d 142, 2004-Ohio-6110, ¶ 13, quoting *State v. Ishmail,* 54 Ohio St.2d 402 (1978), paragraph one of the syllabus.

{¶43} "Exhibit B" of appellant's appendix 1 appears to be a summary of U.S. Bank transactions for Busted News Group which apparently was compiled by appellant from documents contained in appellee's trial "Exhibit A." This specific document is not contained in the trial court record; we thus grant appellee's motion to strike this document. In addition, "Exhibit C" of appellant's appendix 1 includes several receipts from Staples, Office Max, and Possible Plastics, Inc., detailing personal expenditures appellee purportedly made for Busted News Group using the name or tax-exempt identification number of a Columbus area church. As noted above, at trial, appellee withdrew these documents and corresponding claims for damages. Accordingly, we grant appellee's motion to strike these documents. The remainder of the documents included in appellant's appendices that appellee now challenges were part of the trial court record; we therefore deny appellee's motion to strike these documents.

{¶44} Appellee's motion to strike and appellant's reply thereto also contain unspecified and unsubstantiated requests for sanctions, costs, and attorney fees. Both requests are denied.

{¶45} To the extent indicated above, appellee's motion to strike is granted in part and denied in part. Having overruled appellant's three assignments of error, we affirm the judgment of the Franklin County Municipal Court.

*Motion to strike granted in part and denied in part;*
*judgment affirmed.*

CONNOR, P.J., and TYACK, J., concur.

_____